## In re UNITED BUTTON CO.

### (District Court, D. Delaware. September 17, 1904.)

**1. BANKRUPTCY—FEDERAL COURTS—JURISDICTION.**

Where a bankrupt corporation had its domicile in one judicial district, and its principal place of business in another, the courts of bankruptcy of both districts had concurrent jurisdiction of involuntary bankruptcy proceedings against it.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 20.]

**2. SAME — GENERAL BANKRUPTCY ORDERS — CONSTRUCTION — "INDIVIDUAL"—CORPORATIONS.**

General Bankruptcy Order 6 (89 Fed. v. 32 C. C. A. ix) provides that, in case two or more petitions shall be filed against the same "individual" in different districts, the first hearing shall be had in the district in which the debtor has his domicile, etc. *Held*, that the word "individual," as so used, was equivalent to "person," and as such included a corporation.

**3. SAME—PARTIES IN INTEREST.**

Bankr. Act July 1, 1898, c. 541, § 32, 30 Stat. 554 [U. S. Comp. St. 1901, p. 3434], provides that in the event petitions are filed against the same person in different courts of bankruptcy, each having jurisdiction, the cases shall be transferred to and be consolidated by the one of such courts which can proceed with the same for the greatest convenience of "parties in interest"; and General Order 6 (89 Fed. v, 32 C. C. A. ix) provides that the court retaining jurisdiction, in case several petitions are filed in different courts, if satisfied that it is for the greatest convenience of "parties in interest" that another of said courts should proceed with the cases, shall order them to be transferred to that court. *Held*, that the term "parties in interest" was not limited to unsecured creditors of the bankrupt, but included all persons whose pecuniary interests were directly affected by the bankruptcy proceedings.

**4. SAME—CONVENIENCE.**

Proximity of the place of business of a bankrupt to the court entertaining proceedings in bankruptcy and proximity of a majority of the bankrupt's creditors in number or amount of claims, though persuasive, is not conclusive in determining the court which shall assume final jurisdiction of the proceedings commenced in several districts in courts having concurrent jurisdiction.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 22.]

**5. SAME—EVIDENCE.**

On an application to transfer a bankruptcy proceeding to a court of another district, facts *held* insufficient to establish that such transfer would be for the greatest convenience of parties in interest.

Application for transfer of proceedings instituted in district of the bankrupt's domicile to the district where it was principally engaged in business, etc. The opinion states the case.

See 132 Fed. 378.

Bowers & Sands, Latson & Bonynge, Philbin, Beekman & Menken, Sherman & Sterling, and Thomas F. Bayard, for the motion.

Benjamin Nields and James, Schell & Elkus, opposed.

BRADFORD, District Judge. This is an application for the removal of the Security Trust and Safe Deposit Company, as receiver in bankruptcy of the United Button Company, adjudged bankrupt by this court, and for the transfer of the proceedings in bankruptcy

to the District court for the Southern District of New York and the relinquishment by this court of all jurisdiction of the case. The bankrupt is a manufacturing corporation organized under the laws of Delaware, and since its incorporation, in 1902, and until the institution of bankruptcy proceedings as hereinafter stated, was engaged in the manufacture and sale of buttons. It was the owner of three manufacturing plants situated in Massachusetts, at Boston, Easthampton and Springfield. It did not manufacture outside of Massachusetts. As created and existing under the laws of Delaware, that State was its domicile. The bankrupt had and maintained business offices in the city of New York, where it contracted principally, if not wholly, for the manufacture and sale of buttons. In that city it also had its warerooms, where a large amount of its manufactured produce was kept. In Chicago it had a branch office, where samples of its buttons were kept; but orders received in that city were forwarded to the New York office, where they were filled. The manufacturing plants of the bankrupt were operated under orders or directions from the New York office. A petition in involuntary bankruptcy was filed in this court August 4, 1904, against the bankrupt, and it was duly adjudged bankrupt August 10th, 1904. On the latter day, the Security Trust and Safe Deposit Company, a corporation of Delaware, was appointed receiver of the property and effects of the bankrupt and duly qualified on the next following day. An involuntary petition was also filed August 6, 1904, against the bankrupt in the District Court for the Southern District of New York, and on the same day that court made an order appointing Peter Alexander receiver, purporting to confer on him power to continue the business of the bankrupt in its several branches. Alexander forthwith gave bond as required and on the day the order was made for his appointment took actual possession of the assets of the bankrupt located in the city of New York. The District Court for the District of Massachusetts made an order August 8, 1904, ancillary in its purpose or nature, purporting to give full force and effect throughout Massachusetts to the appointment of Alexander as receiver of the bankrupt. On the next following day, Alexander, acting ostensibly as receiver, took possession of the several manufacturing plants of the bankrupt. An order ancillary in its purpose or nature was made August 12, 1904, by the District Court for the Northern Division of the Northern District of Illinois of the same character as the order made by the District Court in Massachusetts, and on the same day Alexander, acting ostensibly as receiver, took possession of all the assets of the bankrupt within the territorial jurisdiction of the District Court in Illinois, granting the order. A petition in involuntary bankruptcy was also filed August 13, 1904, in the District Court for the District of Massachusetts, against the bankrupt, and two days thereafter an application was made to that court for the appointment of a receiver in bankruptcy. It appears, however, that the court of Massachusetts did not make such appointment, and further, that the proceedings in Massachusetts have since been dismissed. The Security Trust and Safe Deposit Company, as

receiver appointed by this court, applied August 17, 1904, to the District Court for the Southern District of New York for an order staying all proceedings in that court against the bankrupt and directing Alexander to deliver all its assets within that jurisdiction to it, the Delaware receiver, and seeking its own appointment or recognition as ancillary receiver throughout the southern district of New York. Judge Thomas granted, August 30, 1904, the above application of the Delaware receiver, saying, among other things, in his opinion (12 Am. Bankr. Rep. 767, 132 Fed. 378):

"The District Court of Delaware first took jurisdiction; it adjudicated the corporation bankrupt; it is the court within the district of the domicile. These facts severally vest it with exclusive jurisdiction to proceed with the administration. * * * These views lead to the conclusion that the proceedings in this court should be stayed, and that the corporation appointed receiver in the Delaware district should be appointed ancillary receiver in this district, and that the receiver heretofore appointed in these proceedings should transfer to such other receiver all property of the bankrupt within his control, upon payment of all expenses of administration in this district, so far as it has proceeded."

Accordingly, the same judge, September 1, 1904, ordered that all proceedings under the involuntary petition filed in the southern district of New York against the bankrupt be stayed; that the petitioning creditors in that petition be restrained from taking any further proceedings under it; that the Delaware receiver be appointed ancillary receiver of the assets of the bankrupt in the southern district of New York with authority to take into its possession and custody all the property of the bankrupt situated in that district, "subject to the payment of all indebtedness incurred properly by the receiver, Alexander, accordingly as this court shall determine and allow"; that Alexander forthwith surrender and turn over to the Delaware receiver all the assets of the bankrupt then in his possession or under his control, "subject to the audit and allowance by this court of his accounts, but said Alexander, receiver, shall retain from the moneys in his hands the sum of ten thousand dollars ($10,000) as a fund to meet legal expenses, the balance thereafter to be paid to the ancillary receiver"; and that Alexander should forthwith "prepare and file his accounts as receiver herein, setting forth all expenses of administration in the southern district of New York so far as it has proceeded, and upon the allowance of such account by this court the same shall be a lien on all property delivered to the ancillary receiver pursuant to this order." On the same day Judge Holt, in the District Court for the Southern District of New York, on the application of the petitioning creditors in the bankruptcy proceedings in that district, ordered that the Delaware receiver show cause September 14, 1904, why all proceedings under and by virtue of the order of that court made by Judge Thomas should not be stayed pending the presentation to and determination by this court of an application for an order removing the Security Trust and Safe Deposit Company as receiver, and staying all proceedings by virtue of its appointment and relinquishing the jurisdiction of this court in the premises to the District Court for the Southern District of New York. The foregoing proceedings re-

sulted in the filing, September 7, 1904, of the present application or petition.

Courts of bankruptcy in the United States are authorized within their territorial limits to "adjudge persons bankrupt who have had their principal place of business, resided, or had their domicile within their respective territorial jurisdictions for the preceding six months, or a greater portion thereof," and in certain other cases not germane to the matter in hand. Where for the required period one has had his domicile in one judicial district, his residence in another, and his principal place of business in a third, the courts of bankruptcy for the three districts respectively have concurrent jurisdiction over the institution of proceedings in bankruptcy against him, by reason of his domicile, residence and principal place of business. So concurrent jurisdiction exists if, for such period, his domicile or residence has been in one district and his principal place of business in another. The word "persons," as used in the Bankruptcy Act, includes corporations except where otherwise specified. Section 2 (19) of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3421]) empowers the several courts of bankruptcy to "transfer cases to other courts of bankruptcy," but does not prescribe the conditions or circumstances under or upon which such transfer may be made. Section 32 (30 Stat. 554 [U. S. Comp. St. 1901, p. 3434]) provides:

"In the event petitions are filed against the same person, or against different members of a partnership, in different courts of bankruptcy, each of which has jurisdiction, the cases shall be transferred, by order of the courts relinquishing jurisdiction, to and be consolidated by the one of such courts which can proceed with the same for the greatest convenience of parties in interest."

The natural import of this provision is that where a court relinquishes jurisdiction of a petition in involuntary bankruptcy, under the circumstances stated, the case shall be transferred to and be consolidated with the other petition or petitions by such one of the courts having concurrent jurisdiction as can proceed with the case "for the greatest convenience of parties in interest." General Order 6 (89 Fed. v, 32 C. C. A. ix) in bankruptcy is as follows:

"In case two or more petitions shall be filed against the same individual in different districts, the first hearing shall be had in the district in which the debtor has his domicile, and the petition may be amended by inserting an allegation of an act of bankruptcy committed at an earlier date than that first alleged, if such earlier act is charged in either of the other petitions; and in case of two or more petitions against the same partnership in different courts, each having jurisdiction over the case, the petition first filed shall be first heard, and may be amended by the inserting of an allegation of an earlier act of bankruptcy than that first alleged, if such earlier act is charged in either of the other petitions, and, in either case, the proceedings upon the other petitions may be stayed until an adjudication is made upon the petition first heard; and the court which makes the first adjudication of bankruptcy shall retain jurisdiction over all proceedings therein until the same shall be closed. In case two or more petitions shall be filed in different districts by different members of the same partnership for an adjudication of the bankruptcy of said partnership, the court in which the petition is first filed, having jurisdiction, shall take and retain jurisdiction over all proceedings in such bankruptcy until the same shall be closed; and if such petitions shall be filed in the same district, action shall be first had upon the one first filed. But the court

so retaining jurisdiction shall, if satisfied that it is for the greatest conven-
ience of parties in interest that another of said courts should proceed with the
cases, order them to be transferred to that court."

The word "individual," as used in the above general order, has
been held by Judge Thomas, in a branch of the pending litigation,
correctly, as I think, to be equivalent to "person," and as such to
include a corporation. The effects of the general order in connection
with the provisions of the Bankruptcy Act is, among other things,
to make it the duty of the court retaining jurisdiction of the case
by reason of the domicile of the alleged bankrupt, "if satisfied that
it is for the greatest convenience of parties in interest," that another
court having concurrent jurisdiction should proceed with the case,
to order it to be transferred to such other court. Assuming that
the bankrupt had its principal place of business, not in Massachu-
setts, where its product was manufactured, but in the city of New
York, this application turns on the question whether the petition,
affidavits and exhibits, and the argument of counsel, have satisfied
the court that the transfer of the case to the District Court for the
Southern District of New York would be "for the greatest con-
venience of parties in interest." Unquestionable jurisdiction of the
case, owing to the domicile of the bankrupt, existing here, the bur-
den of satisfying this court that the greatest convenience of the par-
ties in interest requires a removal of the case to New York, rests
upon those seeking such removal. It is not going far to say that
on general principles of policy a court having taken cognizance of
a case within its undoubted jurisdiction should not abandon to other
tribunals the performance of the duty it has assumed unless it has
clear warrant for so doing. The Bankruptcy Act does not define
or describe "greatest convenience" or "parties in interest," as those
phrases are used in section 32 and general order 6. Both expres-
sions are elastic and largely indefinite. It is manifestly too narrow
a construction of the phrase "parties in interest" to restrict it merely
to unsecured creditors in bankruptcy. The bankrupt is not only lit-
erally but substantially a party in interest. A creditor holding
security which is sought to be set aside by the trustee in bank-
ruptcy is also a party in interest. And it probably may be stated
with accuracy that all persons whose pecuniary interests are directly
affected by proceedings in bankruptcy are, within the true meaning
of section 32 and general order 6, parties in interest. What may
be for the greatest convenience of parties in interest does not neces-
sarily depend upon only one factor or circumstance entering into
the situation. Proximity of the place of business of the bankrupt to
the court entertaining proceedings in bankruptcy, though a circum-
stance sometimes entitled to weight is by no means conclusive, and
the same may be said with respect to proximity to the place of man-
ufacture. Proximity of a majority of the creditors of the bankrupt
in number or in the amount of their claims is a circumstance which
should also be duly weighed. And the same may be said with at
least equal force of a majority of the debtors of the bankrupt in
number or in amount. Nor is the element of expedition or of
economy in the administration of the estate in bankruptcy to be lost

sight of. Taking into consideration all the circumstances disclosed by the petition, affidavits and exhibits, this court is not satisfied that the transfer of the case in hand to the District Court for the Southern District of New York would be for the greatest convenience of the parties in interest. I do not think that the petitioners have adduced the preponderance of evidence required of them as those on whom the onus of proof rests to justify a removal. It satisfactorily appears by the affidavits and exhibits that of the total number of 85 unsecured creditors represented in support of and opposition to the petition for removal 31, having unsecured claims aggregating between $91,000 and $92,000, are in favor of removal, and the remaining 54, having unsecured claims amounting in the aggregate to between $92,000 and $93,000, are opposed to removal. There is no satisfactory or reliable evidence of the desire of the remaining unsecured creditors of the bankrupt with respect to the removal or retention of the case. There are some loose statements on the subject, but not of a character to impress the court. Of the 31 unsecured creditors in favor of removal it appears that 8 reside in New York and the remainder in Massachusetts. Of the 54 unsecured creditors opposing the removal, 20 reside in Massachusetts, 1 in Pennsylvania, and no residence is given to the remaining 33. There is no evidence whatever as to the residence of the debtors of the bankrupt, save the statement that the bankrupt has accounts receivable throughout the United States. What is the center of population represented by the debtors of the bankrupt is wholly problematical. It appears that the bankrupt issued bonds secured by mortgage on the property to the amount of about $400,000. In the application for removal it is stated on information and belief that the above mentioned mortgage has been declared by counsel to be void, "and as your petitioners are informed and verily believe, the validity of the said instrument, and the rights of the various parties in interest thereunder, will be submitted for adjudication in appropriate litigation now contemplated for that purpose." Of the $400,000 face value of bonds, $209,500 are held by creditors of the bankrupt opposing removal. Of the $209,500 face value, $86,000 are held in Delaware, $47,500 in New York, $73,000 in Massachusetts and Rhode Island, and $3,000 in New Jersey. It does not appear from the evidence that more than from $45,500 to $50,000 of the mortgage bonds of the bankrupt are held by the creditors in favor of removal, of which a large majority are held, not in absolute ownership, but merely as collateral security. Those in favor of removal and holding the above mentioned $45,500 or $50,000 of bonds reside in New York. It is not shown where or by whom the remaining outstanding mortgage bonds of the bankrupt are held. Much stress was laid by counsel for the petitioning creditors upon the fact that the principal place of business of the bankrupt was located in New York City. Assuming this to be the case, notwithstanding a decision in New York which tends to the contrary, I am unable to perceive that the fact has much materiality or relevancy, as orders and directions may be sent to the manufacturing plants in Massachusetts from the

receiver in Wilmington, as well as from one in New York or Chicago. It was stated in open court, and not denied, that objection has been taken to the bankruptcy proceedings in New York on the ground of the want of jurisdiction. Whatever question of jurisdiction may possibly be raised in New York, there can be none here in the domicile of the bankrupt. Whether the alleged want of jurisdiction can be established or not, the question raising it may lead to considerable delay, which would be avoided by a retention by this court of the case. It was strongly urged by the counsel for the petitioners that the fact that a majority in number and amount of the creditors and claims are opposed to the removal of the case to New York should not of itself be considered by this court conclusive on the question of the greatest convenience of parties in interest, but that the court should form its own judgment on that question. This undoubtedly is true; but the fact of the expressed preference of a majority of the creditors of the bankrupt that the case should be retained by this court is strong evidentiary value. It is not to be assumed that large numbers of intelligent persons who, as creditors or other parties in interest, are keenly alive to their own pecuniary welfare, would oppose the removal sought, unless satisfied under all the circumstances of the case that it is for their convenience and benefit that the case should be retained. The elements here entering into the determination of the convenience or inconvenience are so numerous and complex that strong evidence is required to justify a removal. Such proof has not been adduced. On the whole I am far from being satisfied that a case for removal has been made out. It must, therefore, be denied.