## In re AMERICAN BOND & MORTGAGE CO.

District Court. D. Maine, S. D.
April 22, 1932.

See also (D. C.) 50 F.(2d) 441.

Verrill, Hale, Booth & Ives and Cook, Hutchinson, Pierce & Connell, all of Portland, Me., for petitioners.

Saul S. Myers and Selden Bacon, both of New York City, Martin Witte, of Boston, Mass., and Frederick R. Dyer, of Portland, Me., for objecting creditors.

PETERS, District Judge.

The American Bond & Mortgage Company is a corporation organized and existing under the laws of Maine. With headquarters in Chicago, for many years it did a large business, floating some $150,000,000 of bonds of other companies and carrying on several activities incidental to its brokerage affairs.

In 1931 financial difficulties of the company culminated in a receivership and bankruptcy. On May 21st, in Chicago, there was filed an involuntary petition in bankruptcy and also a bill in equity by general creditors asking for a receivership. On May 25th an involuntary petition was filed against the company in Maine. On September 5th a voluntary petition was filed by the company in Chicago. Adjudication immediately followed. The company was adjudicated a bankrupt in Maine on October 15, 1931.

On March 3, 1932, the company filed in this court a petition to transfer proceedings to the District Court sitting in Chicago for the Northern District of Illinois. On March 9, a petition to the same effect was filed by a committee claiming to represent debenture bondholders to the amount of $4,255,800 out of a total of $4,869,000. As these debentures were not secured by any property, the holders were unsecured creditors and listed as such in the schedules filed by the bankrupt.

The total amount of unsecured claims is given by the bankrupt in its schedules as $5,667,099. Similar petitions to transfer were filed May 27 and 28, 1931, but were allowed to slumber after a partial hearing, when other affairs of the company came up for consideration. A bankruptcy receivership was denied in Maine.

According to certified copies of docket entries and orders of court filed in evidence here, the subsequent history of the general course of proceedings in Chicago has been as follows:

Involuntary petition: A denial of bankruptcy was filed and later withdrawn. Motions were made for the appointment of a receiver, for a stay of proceedings, and to dismiss the petition. On September 5, Judge Wilkerson entered an order that the motion to dismiss the petition be denied and that the proceedings on the petition be stayed "until hearing on the petition in bankruptcy filed against the respondent herein in the United States District Court for the District of Maine, or until the further order of this Court."

Voluntary petition: Adjudication having followed the filing of the petition on September 5th, a motion for appointment of receiver was filed and continued from time to time. The time for filing schedules by bankrupt was extended from time to time. Royal Indemnity Company, claiming to be a creditor, filed a petition and motion to vacate the order of adjudication and to dismiss the petition for lack of jurisdiction. On March 23, 1932, motion to vacate the adjudication and dismiss the petition was denied by Judge Barnes, he holding that the Chicago court had jurisdiction under the voluntary petition.

Equity proceedings: On the bill in equity for receivership the Chicago Title & Trust Company was appointed receiver on May 22, 1931, Arthur W. Draper was subsequently added as individual receiver, and the receivers were authorized to take possession of the assets of the company, to manage and operate them as a whole, and to continue the operation of the business to the extent that the receivers might deem advisable until further order of court; and it appears from a great mass of documents filed here, being copies of the papers in the equity proceedings in Chicago, that since their appointment the receivers have been actively engaged in administering the affairs of the corporation.

Answers to the petitions to transfer have been filed by the Royal Indemnity Company and National Title & Guaranty Company, New York corporations; the former claiming to be a creditor for upwards of $500,000, and the latter for upwards of $250,000. The bankrupt in its schedules denies that Royal Indemnity Company is a creditor at all and says that the amount, if any, due the National Title & Guaranty Company is undetermined.

These answers, covering a very wide field of both law and fact, deny that the status of the proceedings in Chicago permits a transfer and allege that the petitioners have not shown that a transfer would be for the greatest convenience of parties in interest. Hearing was had and testimony taken on March 24, 1932, since which time counsel have filed briefs, and a great mass of documentary evidence has been introduced under permission previously given.

As the authority to transfer is derived from section 32 of the Bankruptcy Act (11 USCA § 55) and General Order VI (11 USCA § 53), it is clear that two principal questions are involved: (1) Have petitions been filed against (or by) the bankrupt in different courts of bankruptcy each of which has jurisdiction; and (2) which court can proceed with the case "for the greatest convenience of parties in interest"? The statute provides that, "in the event petitions are filed against the same person," etc. Accepted construction enlarges this wording to include petitions filed "by" as well as "against," and to include corporations as well as persons. Also it seems clear that not only should a petition be filed, but that it should be pending as a valid bankruptcy proceeding, so that other bankruptcy proceedings may be consolidated therewith.

I shall consider the above questions in inverse order, taking up first the matter of the place of most convenient administration. If it is not shown affirmatively that proceedings can be continued in Chicago with greatest convenience to all parties, the case should remain here, the domicile of the corporation, in the court which has undoubted jurisdiction. On the other hand, if the evidence shows conclusively that a continuation of all proceedings in the other court would be for the greatest convenience of all parties in interest, this court is obliged to order the transfer, because section 32 provides that "the cases *shall* be transferred" if the conditions named are present.

It is not practicable to detail the evidence and circumstances upon which this matter of the greatest convenience of the parties interested is to be determined. Some of the larger

features which force me to the conclusion that the case can be more conveniently handled in Chicago are as follows:

The business of the corporation, while it involved transactions in almost all the states of the Union, centered in Chicago, where its books, papers, and accounts were and are kept. At that point it carried on not only its brokerage business in real estate bonds, but its insurance business, its trust business, and other incidental activities.

The affairs of the company have become greatly involved. The administration of the estate necessarily will be exceedingly complicated. Criminal proceedings against some of the former officers have been begun. Many examinations and investigations will be necessary. Various classes of creditors will want to be heard. Information obtainable only from the books and records of the corporation and from officers and employees familiar with them, and living in or near Chicago, will be frequently, and for a long time constantly, necessary.

The trustee, when elected, will be required to manage the affairs of various subsidiary companies in Chicago and elsewhere and will require the assistance of former officers and employees residing in Chicago.

The debenture bondholders seem to constitute by far the largest block of unsecured creditors. They are scattered all over the country, but, taking only those states which show holders of bonds numbering more than one hundred individuals, it appears that there are in Ohio, 114; New Jersey, 125; Indiana, 160; Massachusetts, 184; Iowa, 268; New York, 1053; Illinois, 1603.

From a list filed with me by the objecting creditors it appears that there are sixty-two holders of bonds in Maine. The active members of the debenture bondholders' committee reside in Chicago as do their principal counsel.

The banks of Chicago and vicinity appear to be more heavily interested than those of any other locality. No bank in Maine is mentioned in the schedules. Next to Chicago there are in New York more banks and individuals interested in the administration of the estate than in any other locality; but there is no petition pending in New York. It is a question between Maine and Illinois. A very substantial reason for administering the affairs of the company in Chicago is the fact that the equity receivership there pending must be settled in connection with the bankrupt estate. The receivers have in their possession all the assets of the bankrupt and

have been carrying on the business since May of 1931 under authority of the very court to which this proceeding is asked to be transferred. It is obvious that a great saving in time, expense, and inconvenience will be had by turning this proceeding over to that court.

The company never has had any assets, business, debtors, or creditors in Maine, except to a nominal extent as above mentioned.

The necessities of administration would seem to require a trustee, if appointed in Maine, to take up his residence in Chicago immediately and indefinitely.

If the question of jurisdiction was not involved, and the question were where can this estate be most conveniently administered, probably Maine would be the last considered of all the states east of the Mississippi river. I can see no reason whatever for this court handling the matter except that it happens to have jurisdiction as the technical domicile of the corporation; and if Chicago has jurisdiction also it is clear that the convenience of the parties requires the transfer.

■ The jurisdiction of the District Court in Chicago and the validity of the proceedings there have been vigorously attacked. The second section of the bankruptcy act authorizes petitions to be filed in the district where the alleged bankrupt has had his principal place of business, resided or had his domicile for the preceding six months or the greater portion thereof. When, therefore, a bankrupt resides in one district and does business in another, the courts of each district have concurrent jurisdiction. It can hardly be doubted in this case that the bankrupt had its principal place of business in Chicago for six months or more prior to the filing of the involuntary petition there. I so find from the evidence. It is not questioned that its domicile is in Maine. Therefore the courts of both districts have jurisdiction, and a petition could be properly filed in both districts.

■ The general principle, that where more than one court has jurisdiction the court first acquiring jurisdiction shall be allowed to pursue it to the end, must yield to the definite provision of the statute (section 32 of the Bankruptcy Act), as must General Order VI, so far as in conflict therewith. In re Okmulgee Producing & Refining Co. (D. C.) 265 F. 736.

■ The objecting creditors here have pointed out various alleged omissions and defects in the involuntary petition in Chicago in their attempt to destroy it as a proper foundation

for further proceedings; but, so far as they appear to be technical defects and amendable, I consider that I have nothing to do with the matter. I have no right and no disposition to assume that necessary amendments will not be made.

The principal attack on the involuntary petition is against its present standing, claiming that it has been invalidated by abandonment and that it is not actually a pending bankruptcy proceeding at the present time. The argument seems to be based wholly on the supposed analogy between that situation and the facts in the case of Acme Harvester Company v. Beekman Lumber Co., 222 U. S. 300, 32 S. Ct. 96, 56 L. Ed. 208. Certain expressions of the Supreme Court in that case are argued to be applicable to the facts here, such as: "It is not within the province of the bankruptcy court to deny an adjudication in bankruptcy, and then hold jurisdiction over the property for the purpose of allowing some of the creditors to effect a reorganization and the distribution of the property." Pages 309–310 of 222 U. S., 32 S. Ct. 96, 100. In the Acme Harvester Case there was clearly good reason for the Missouri state court first (215 Mo. 221, 114 S. W. 1087), and for the Supreme Court later, to find that the bankruptcy proceedings had been abandoned. Significant facts are stated in the opinion of the court. Referring to the District Court and the bankruptcy proceedings which had been instituted there, the court says:

"It declined to appoint a receiver; it recognized the propriety of the proceedings of the creditors' committee; it received reports of the creditors' committee, and allowed it for years to go on in the operation of the property, to mature a plan for the settlement of the debts outside of the court and not contemplated in the bankruptcy act. The creditors in large numbers signified a purpose to take stock in a reorganization, and *for more than five years after the time of the filing of the petition,* it was found by the supreme court of Missouri, *had made no attempt to adjudicate the corporation a bankrupt, or proceed to the settlement of the estate under the requirements of the act.* * * *

"We cannot say that the supreme court of Missouri was wrong; indeed, we think it was right in reaching the conclusion that the district court had declined to adjudicate the corporation a bankrupt and vest its property in a trustee, and, deeming it best for the creditors to follow out their plans, had found that the case was not one calling for the intervention of the bankruptcy court. Indeed, there is nothing in the record to contradict the statement of the circular in evidence in the court below, that the court had found the corporation solvent. *With the question of adjudication determined against the right to proceed in bankruptcy,* the jurisdiction of the district court ended, and the property became subject to the ordinary methods of precedure in courts of competent jurisdiction." (The italics are mine.)

The Supreme Court in the case mentioned held that a bankruptcy court cannot, even for the benefit of creditors, deny an adjudication and hold jurisdiction over the estate for the purpose of allowing some of the creditors to effect a reorganization and distribution of the property.

The claim is made here that the District Court in Illinois, receiving the involuntary petition and the bill in equity asking for a receivership at the same time, disregarded the petition and proceeded to appoint receivers in equity and turn over the administration of the estate to them and to authorize large disbursements of assets contrary to the provisions of the Bankruptcy Law; that the petition was used as a covering proceeding to be held over the equity receivership as a shield; that the petitioners never intended to prosecute it and never have prosecuted it, and, having been wholly disregarded and practically rejected by the court, it is now, to all intent and purpose, defunct.

The language of counsel is well adapted to the facts in the Acme Harvester Case, but is not an apt characterization of the situation disclosed in Chicago. The District Court there, instead of denying adjudication, "practically" or otherwise, on September 5, 1931, denied the motion, made by the objecting creditors here, to dismiss the petition, and ordered further proceedings stayed until hearing could be held in this district, the domicile of the bankrupt, on petition filed here. The record, instead of showing an intention to abandon the proceedings, shows an intention on the part of the court to preserve the status quo until the first hearing could be had in the court of domicile as required by General Order VI and until a determination of the question of transfer. The record does not permit a finding that the Chicago proceedings referred to have been abandoned. On the contrary, I hold, as I would be obliged to find and hold, to order a transfer, that there is a pending petition in the Eastern Division of the District Court for the Northern District of Illinois to which the case pending in Maine can be transferred.

█ It is, of course, necessary only to find one petition pending in another court having jurisdiction. In this case, in addition to the involuntary petition above referred to, there appears to be a voluntary petition pending in Chicago. The objecting creditors here attacked the voluntary petition there and filed a motion to dismiss on the ground that there was no jurisdiction in that court to adjudicate bankruptcy of the American Bond & Mortgage Company, as it had not had its principal place of business in that district after the appointment of the equity receivers (a period which covered the greater portion of the six months next preceding the voluntary petition), and also on the ground that, under the laws of Maine, a board of directors of a corporation organized under the laws of Maine have no power to authorize the filing of a voluntary petition in bankruptcy in the corporate name.

Judge Barnes, on March 23d, last, handed down a memorandum opinion[1] denying the motion to dismiss and upholding the jurisdiction of that court.

The same objections are now urged here and I am asked to decide that the Illinois court had no jurisdiction.

The statute (section 32) seems to make it incumbent upon me, before ordering a transfer, to find the existence of the two conditions first hereinabove mentioned, viz.: (1) The pendency of a petition by or against the same person in this and in another district having jurisdiction; and (2) that the greatest convenience of the parties would be best subserved by a transfer. This seems to require a decision on questions of law raised against such jurisdiction, whether previously decided in the other district or not, and, in the case of the involuntary proceedings, I have already made such decision on a point not raised, to my knowledge, in the other court. In the case of the voluntary proceedings the situation is different. The same points made here were urged before Judge Barnes, noted in his opinion and decided. While not concluded by his action, I should certainly regard it as very persuasive and believe that, in the interest of orderly procedure and speedy ending of litigation, I should not decline to follow it unless I concluded that it was clearly wrong. At least, it is a precedent which I feel justified in following, and I do so.

█ It has been suggested by the indefatigable counsel for the objecting creditors that I should designate to which proceeding in Chicago this case should be transferred and with which consolidated. I consider that to be beyond my province. The statute is plain on that point. It says the case "shall be transferred * * * to and be consolidated by the one of such courts which can proceed with the same for the greatest convenience of parties in interest." I have found that the Illinois court can proceed with the greatest convenience. Consequently that court will have to do the consolidating.

An order may be prepared in accordance with this opinion.