### In re TRITON CHEMICAL CORPORATION et al.
### Nos. 1414, 1415.

District Court, D. Delaware.
Aug. 21, 1942.

Ivan Culbertson, of Wilmington, Del., and M. Robert Gallop and Kaufman & Cronan, all of New York City, for Delaware petitioning creditors.

W. P. Hazlegrove and Greene H. Lawson and Cocke, Hazlegrove & Shackelford,

all of Roanoke, Va., for Virginia petitioning creditors.

Clarence A. Southerland and Southerland, Berl & Potter, all of Wilmington, Del., and Francis T. Christy and Richard Swan Buell and McLanahan, Merritt, Ingraham & Christy, all of New York City, for alleged bankrupts.

LEAHY, District Judge.

The controversy here has arisen because different sets of creditors wish the affairs of the alleged bankrupts to be administered in different Districts.

On February 24, 1942, involuntary petitions in bankruptcy were filed in this court against Triton Chemical Company, Inc. (hereinafter referred to as "Company") and Triton Chemical Corporation (hereinafter referred to as "Corporation"), both Delaware Corporations, by Amtorg Trading Corporation, American Armament Corporation, and the Argentina Naval Commission. Their petitions allege that they are creditors whose claims aggregate in excess of $363,000.00. Two months after the filing of the petitions in this Court, an involuntary petition was filed against the alleged bankrupts in the United States District Court for the Western District of Virginia by four creditors whose aggregate claims do not exceed $2,828.00. These creditors challenge this Court's right to pass on the present inquiry.

Answers have been filed here by the alleged bankrupts which admit the jurisdiction of this court, but deny the acts of bankruptcy as alleged. An order was entered, under Section 32 of the Bankruptcy Act, 11 U.S.C.A. § 55, and General Order No. 6, 11 U.S.C.A. following section 53, directed to both the Delaware and Virginia petitioning creditors, to show cause why this Court should not be determined to be the court of greatest convenience to the parties in the administration of these estates. At the hearing, evidence was adduced in support of the position that this court is the forum of greatest convenience. No counter proof whatsoever was offered.

▮ The jurisdiction of this Court over the alleged bankrupt must be conceded.[1] The record shows that the acquisition of this jurisdiction antedated that of the Virginia court by two months. Therefore, under Section 32 of the Bankruptcy Act and General Order No. 6, it must, as "the court first acquiring jurisdiction", determine which is the court of greater convenience to the parties in interest.[2]

▮▮ The Virginia creditors urge that the present proceedings are premature because, as the Virginia District Court has already ruled, an adjudication in bankruptcy in each district is necessary before proceedings may be instituted under Section 32 of the Bankruptcy Act and General Order No. 6. I shall not attempt to construe—much less review[3]—the opinion filed in the Virginia proceedings. I need only state that it does not bind this Court. Judge Morris has definitely made it the law of this district that an adjudication of bankruptcy is not a necessary prerequisite of a determination of greatest convenience. In re Okmulgee Producing & Refining Co., D.C., Del., 265 F. 736.

I accordingly proceed to a determination of which is the court of greater convenience to the parties under the facts of this case.

▮ The burden is on the Virginia creditors to establish by a fair preponderance of the evidence that it would be for the greater convenience of the parties to transfer these bankruptcy causes from the district of the alleged bankrupts' domicile to Virginia. Collier on Bankruptcy, § 2.19; In re Republic Gas Corp., D.C.Del., 6 F.Supp. 70; In re Tybo Mining & Reduction Co., D.C., 132 F. 978. Inasmuch as they offered no evidence whatsoever at the hearing, it is difficult to find that they have even

---

[1] As both alleged bankrupts are Delaware corporations, they are "domiciled" in this district. Remington on Bankruptcy § 39.50; Collier on Bankruptcy § 2.19; Fletcher on Corporations, Perm. Ed., § 4025; Shaw v. Quincy Mining Co., 145 U.S. 444, 12 S.Ct. 935, 36 L. Ed. 768; 11 U.S.C.A. § 11, sub. a·(1).

[2] The Virginia creditors argue that the court "relinquishing jurisdiction" rather than that "first acquiring jurisdiction" should determine this issue. That this argument can no longer be made is conclusively demonstrated by comparing 30 Stat. 554, 11 U.S.C.A., 1927 ed., § 55, with 52 Stat. 857, 11 U.S.C.A., 1941 Pocket Part, § 55.

[3] It is the exclusive function of the appellate court to review the opinions of the district judges for error. See 28 U. S.C.A. § 225.

attempted to assume the burden which the law places upon them. I shall nevertheless examine the question of convenience in the light of the facts.

"Greatest convenience" is not defined in the statute or in the general order, but the cases have supplied the definition. In re United Button Co., D.C.Del., 137 F. 668; In re Republic Gas Co., supra; In re Statewide Theatres Corp., D.C.Del., 4 F. Supp. 86.[4] What constitutes the greatest convenience depends upon the circumstances of each case.

We must look at certain determinative factors: (1) proximity of creditors of every kind to the court; (2) proximity of the bankrupts to the court; (3) proximity to the court of the witnesses necessary to the administration of the estate; (4) location of the assets; and (5) the economic and efficient administration of the estate.

(1) There are 139 creditors of Company. A total of 60 creditors, having claims of $140,771.47, have their place of business nearer to this district than to the Virginia district, while 70 creditors, having claims of $53,965.97 have their office nearer to Roanoke, Virginia than to Wilmington, Delaware. But, insofar as Corporation is concerned, 67 out of its 70 creditors, having claims totalling $788,299.42 are nearer to Wilmington than Roanoke. Two creditors having claims aggregating $44.50 may be geographically nearer to Roanoke, but it is clear they will find it more convenient to reach Wilmington. One lone creditor having a claim of $682.57 is nearer to Roanoke than Wilmington. Considering the administration of the estates of both alleged bankrupts for all practical purposes as one proceeding, we have a total of 197 creditors, with total claims in the amount of $985,191.78. One hundred fifteen of these creditors, having claims aggregating $929,070.89 are nearer to Wilmington than to Roanoke. Eleven having claims of $1,- 472.55, while geographically nearer Roanoke, will find it more convenient to reach Wilmington. Seventy-one of the creditors with claims of $54,648.55 are nearer Roanoke. After the foregoing analysis, it seems to me it becomes unnecessary to pause and discuss which is the court of greatest convenience for the creditors. The rational answer is obvious.

(2) The testimony and documentary proof adduced at the hearing disclose that the principal place of business of the two alleged bankrupts was in Wilmington, Delaware. All the books and records are in Wilmington.

(3) It was shown that Wilmington is more convenient than Roanoke for the persons whose presence will undoubtedly be required as witnesses and otherwise in the course of the administration of the estates. The officers and directors of the alleged bankrupts reside in Wilmington, Massachusetts or New York. The accountants who supervised the books are in Wilmington.

(4) Corporation owns and operates a plant at Pennsgrove, New Jersey, a town across the Delaware River from Wilmington, which is visible from this Court's chambers on a clear day. The only asset which the Virginia creditors contend is located in Virginia is a chose in action against the United States Government[5].

(5) In the light of these facts, the estates can obviously be more economically and efficiently administered in this court than in the Virginia court.

The only other point raised by the Virginia creditors which merits discussion is the argument that the present proceedings are improper and void for failure to give notice to all creditors of the alleged bankrupt. They argue that General Order No. 6 provides that the determination of the court in which the case can proceed with the greatest convenience shall be had

4 For further authorities, see In re Devonian Mineral Spring Co., D.C., 272 F. 527; In re American Bond & Mortgage Co., D.C., 58 F.2d 379; In re General Metals Co., D.C., 133 F. 84; In re Southwestern Bridge & Iron Co., D.C., 133 F. 568; In re Sears, D.C., 112 F. 58; In re Isaacson, D.C., 161 F. 779; In re Sterne & Levi, D.C., 190 F. 70.

5 On January 15, 1942, the United States Government took possession of Company's TNT plant at Glen Wilton, Va., by eminent domain proceedings. Several days later, the personal property at the plant was also requisitioned by the Government. Consequently, since about January 20, 1942, the alleged bankrupts have held only bare legal title to the Virginia property. But in substance, in view of the eminent domain proceedings, all they have there is a law suit against the Government which will be tried in Virginia.

upon the application of a party "and after a hearing upon *reasonable notice to parties in interest*", and that, under the decisions of this district "parties in interest" include all creditors, both secured and unsecured, the bankrupt, and every other party whose pecuniary interest is affected. In re United Button Co., D.C.Del., 137 F. 668; In re Statewide Theatres Corp., D.C.Del., 4 F. Supp. 86.

The use of the expression "reasonable notice" leaves it with the court to determine, in its discretion, what constitutes sufficient notice in each case—the persons to receive the notice and the manner in which it should be given.

■ In the present situation, the controversy is not one raised by all the creditors. It is put in issue by the petitioning creditors in Delaware and those in Virginia. They are the ones fundamentally interested in this controversy.

The Bankruptcy Act requires no determination of creditors until *after* adjudication. 11 U.S.C.A. § 25, sub. a (8). Since, as I have already held on the authority of In re Okmulgee Producing & Refining Co., supra, the present proceedings can take place *before* adjudication, "reasonable notice to parties in interest" could not contemplate notice to all creditors.

Moreover, to require the type of notice suggested by the Virginia creditors would add to the statute a provision for a preliminary hearing to determine who are all the creditors. In view of the "trinitarian categories" of our government, it is too late now to talk about the lack of authority in courts to indulge in efforts to effect judicial legislation.

My determination of the question of whether reasonable notice was given of the hearing in this matter is not unaffected by the fact that, in other cases where application was made to this court under Section 32 and General Order No. 6, notice to all creditors was not required[6].

Conflicts over jurisdiction between district courts in bankruptcy matters are unseemly. There should be an attempt to administer the Act harmoniously. If there were any facts which demonstrated that the Virginia court could function for the greatest convenience of all parties concerned under its jurisdiction, I would be the first to lend this court's aid. But, this is manifestly the court of greatest convenience, and the jurisdiction of this court should not be yielded to the court of another district where the determinative factors upon which I rely are not present.

An order may be submitted.

---

[6] In re Statewide Theatres Corp., D.C. Del., 4 F.Supp. 86, the order fixing the hearing made no provision for notice and only the petitioning creditors and the bankrupt appeared at the hearing. In re Okmulgee Producing & Refining Co., D. C.Del., 265 F. 736, there was no order setting the application down for hearing. In Republic Gas Corporation, D. C.Del., 6 F.Supp. 70, notice was simply served on the debtor and the trustee.

And in American Bond & Share Corp., No. 1153 in Bankruptcy, notice was given to the petitioning creditors, the debtor, and notice by publication by one insertion in the paper. The contesting parties as well as the alleged bankrupts having knowledge of the hearing, it would appear the notice requirement in the instant case is as elaborate as any yet ordered in this court.