**In re HOLIDAY TOWERS, INC., Debtor.**

**Bankruptcy No. 2–81–01651.**

United States Bankruptcy Court,
S. D. Ohio, E. D.

March 4, 1982.

Theodore R. Saker, Columbus, Ohio, for Holiday Towers, Inc., Philip L. Fairbanks, Asst. Atty. Gen., Columbia, So. Car., for South Carolina.

Thomas C. Scott, Columbus, Ohio, for Holiday Towers Condominium Property Owners Assoc.

Andromeda Monroe, Columbus, Ohio, for Great American Management and Investment, Inc.

John C. Hartranft, Columbus, Ohio, for N. C. Monroe Const. Co.

## FINDINGS, OPINION AND ORDER ON CREDITORS' MOTION FOR CHANGE OF VENUE

G. L. PETTIGREW, Bankruptcy Judge.

Certain petitioning creditors object to this Court's retention of venue of this Chapter 11 case and seek to transfer the case to the United States Bankruptcy Court for the District of South Carolina. The creditors' motion contends that venue is improper in this district within the meaning of 28 U.S.C. § 1472. They also assert that "in the interest of justice and for the convenience of the parties" venue should be changed under §§ 1474 and 1477 of the Bankruptcy Reform Act of 1978 (Code).

An evidentiary hearing on the matter was held. This Court makes the following findings of fact and conclusions of law based upon evidence presented and briefs and memoranda submitted by the parties.

### Findings of Fact

On April 21, 1981, the debtor, a South Carolina corporation, petitioned this Court for an order for relief under Chapter 11 of the Bankruptcy Reform Act of 1978 ("the Code"). Debtor owns, operates and sells resort condominium units which are located in Myrtle Beach, South Carolina. Debtor commenced business operations on July 13, 1973 and was incorporated under South Carolina law. On November 1, 1980, debtor established new business offices in Reynoldsburg, Ohio. In addition, prior to that date debtor had, through its chairman of the board, A. B. Wilson, carried on much of the financial affairs of the business in Reynoldsburg during the latter half of 1980.

There are only three corporate officers of debtor: A. B. Wilson, chairman of the board and controlling shareholder; Ruth Ann Wilson, secretary; and Drayton Floyd, president. A. B. and Ruth Ann Wilson, husband and wife, are residents of Perry County, Ohio. Drayton Floyd, a resident of Lake City, South Carolina, has not actively participated in the management of the business for several years due to very ill health.

On February 5, 1981, debtor submitted an Application for License to do business in Ohio to the Secretary of State of Ohio. Debtor has maintained bank accounts with two Myrtle Beach, South Carolina banks for several years and with one Columbus, Ohio bank since April of 1981. Tax and bank account records of the debtor have been transferred to the Ohio office. The only records left in South Carolina were copies of the leases. The managing of debtor's condominium units in South Carolina is basically custodial in nature.

### Discussion

Two issues are involved in this case:

1) Based upon a determination of the debtor's principal place of business and principal assets, is venue in Ohio or South Carolina?

2) If venue is proper in Ohio, should this case be transferred to the Bankruptcy Court for the District of South Carolina "in the interest of justice and for the convenience of the parties?"

Three provisions of the Code are pertinent in questions of venue and change of venue. Under § 1472 [1] of the Code, proper venue is defined for the purposes of a corporation as being the location of the "principal assets" or the "principal place of business" during the 180 days prior to the petition being filed. §§ 1475 and 1477 [2] of the

---

1. § 1472. Venue of cases under title 11. Except as provided in section 1474 of this title, a case under title 11 may be commenced in the bankruptcy court for a district—

    (1) in which the domicile, residence, principal place of business, in the United States, or principal assets, in the United States, of the person or entity that is the subject of such case have been located for the 180 days immediately preceding such commencement, or for a longer portion of such 180-day period that the domi-

cile, residence, principal place of business, in the United States, or principle assets, in the United States, of such person were located in any other district; or

    (2) in which there is pending a case under title 11 concerning such persons's affiliate, general partner, or partnership.

2. § 1475. Change of venue. A bankruptcy court may transfer a case under title 11 or a proceeding arising under or related to such a

Code, governing change of venue where original venue is proper or improper, respectively, permit such a change "in the interest of justice and for the convenience of the parties." These sections supersede prior Rules 116(a) and (b) of the Rules of Bankruptcy Procedure. *See* 1 *Collier on Bankruptcy* ¶ 3.02 (15th ed. 1979). Except for the fact that the bankruptcy courts under the Code no longer have the discretion to dismiss a case where venue was improperly laid, the standards under §§ 1472, 1475 and 1477 are the same as under Bankruptcy Rule 116(b) and, as such, the old cases under Rules 116(a) and (b) remain persuasive. 1 *Collier on Bankruptcy, supra.*

Before reaching the question of whether it is in the interest of justice and convenience of the parties to transfer or retain this case, the Court must determine whether venue in Ohio is proper. The question of venue is a factual one, dependent upon a demonstration to the Court by the movants that the Chapter 11 petition was improperly filed in this district by the debtor. *In the Matter of Gulf Manufacturing Corp.*, 4 B.C.D. 521, 522 (S.D.N.Y., B.C. 1978); *In re The Valley Fair Corporation*, 4 B.R. 564, 4 B.C.D. 154 (Bkrtcy.S.D.N.Y., 1978); *In re Hudson River Navigation Corp.*, 59 F.2d 971, 973 (2d Cir. 1932). The mere allegation by the debtor that its principal place of business is within this district is sufficient to establish a prima facie case in support of proper venue. *In re The Valley Fair Corporation, supra; In re Hudson River Navigation Corp., supra.* The burden of proof here is upon the movants to demonstrate to the Court's satisfaction that a change of venue is warranted in this case. *In re The Valley Fair Corporation*, 4 B.C.D. at 155. The movant's burden is to present evidence sufficient to constitute a "fair pre-

ponderance of the evidence." *In re Fairfield Puerto Rico, Inc.*, 333 F.Supp. 1187, 1189 (D.Del.1971); *In re Triton Chemical Corp.*, 46 F.Supp. 326, 328 (D.Del.1942).

Decisions of various federal courts regarding questions of venue have generally followed one of two tests. As disputes over venue typically arise whenever a business enterprise maintains more than one location, the tests, expectedly, concentrate on the function performed at the different locations. The "nerve center" test concentrates on the location of the general executive offices of the corporation, from which broad management decisions emanate. This concept stands in contrast to the so-called "bulk of activity" test, which emphasizes the location of the debtor's principal assets, factories, mills and other manufacturing facilities. *In the Matter of Gulf Manufacturing Corp.*, 4 B.C.D. at 522. *See also In re Hudik-Ross Co., Inc.*, 198 F.Supp. 695, 699 (S.D.N.Y.), *aff'd, In re S.O.S. Sheet Metal Co., Inc.*, 297 F.2d 32 (2d Cir. 1961).

The creditors seeking the transfer contend that venue in Ohio is improper, arguing that both the debtor's principal assets and principal place of business are in Myrtle Beach, South Carolina. In response, debtor apparently concedes that its principal assets, the condominium units, are in Myrtle Beach. However, debtor does assert that as of November 1, 1980, it had established new business offices in Reynoldsburg, Ohio and that prior to that date it had carried on much of its financial activity through its chairman of the board, A. B. Wilson, in Reynoldsburg during much of 1980.

The bulk of activity test is not at issue as the principal assets of the debtor are concededly known to be the condominium units owned by the debtor. Thus, the Court is left to look at the nerve center test to

---

case to a bankruptcy court for another district, in the interest of justice and for the convenience of the parties.

§ 1477. Cure or waiver of defects.

(a) The bankruptcy court of a district in which is filed a case or proceeding laying venue in the wrong division or district may, in the interest of justice and for the convenience of

the parties, retain such case or proceeding, or may transfer, under section 1475 of this title, such case or proceeding to any other district or division.

(b) Nothing in this chapter shall impair the jurisdiction of a bankruptcy court of any matter involving a party who does not interpose timely and sufficient objection to the venue.

determine whether venue is proper in this district.

The facts establish that the moving parties have failed to sufficiently prove that the "nerve center" of the debtor during the 180-day period prior to the debtor's bankruptcy petition was not in Ohio. The evidence shows that the active management of the debtor, consisting of the activities of A. B. Wilson, as chairman of the board and apparent chief operating officer, and Ruth Wilson, as secretary, was in Ohio. Many of the debtor's business records were moved to Reynoldsburg, Ohio during mid or late 1980. By November 1, 1980, the debtor had leased business offices in Reynoldsburg, Ohio. Although the debtor did not apply for a license to do business within Ohio until January, 1981, this evidence does not, by itself, determine the issue. According to Collier, an important consideration in determining a debtor's principal place of business in a Chapter 11 case is in finding where the debtor's principal business activity takes place. 1 *Collier on Bankruptcy, supra,* at ¶ 2.19. A Court stated in a case similar to the one before this Court:

> "If [the debtor] has not complied with the law of the State in obtaining such a certificate [to do business within the State of New York], it is liable to the consequences provided by that law. But, in my opinion, the fact that no certificate was obtained does not change the fact that the principal place of business is where the principal business is done."

*Matter of Duplex Radiator Co.,* 15 Am.B.R. 324, 325, 142 F. 906, 907 (S.D.N.Y.1906). This Court finds the evidence that the debtor did not apply for a license to do business in Ohio until February, 1981 is not controlling, since it is outweighed by evidence of the debtor's intention to do business and eventual establishment of business in Ohio during 1980.

For all the foregoing reasons, the Court holds that the petition as to Holiday Towers, Inc. was properly filed in this Court. It remains, then, to determine whether, despite the existence of proper venue, this case should be transferred to the District of South Carolina "in the interest of justice and for the convenience of the parties," pursuant to § 1475.

■■ Transfer of a pending Chapter 11 case should not be allowed without clear and proper justification. *In the Matter of Louis Marx & Co., Inc.,* 6 B.C.D. 300, 301 (S.D.N.Y.1980); *In re The Valley Fair Corporation,* 4 B.C.D. at 155. Other courts, in determining whether or not to transfer a case, have advocated similar, if not greater, self-restraint. For example, a Texas Court stated: "In determining such transfer issue, this Court should not freely abandon to another district, or lightly shift to another Court, its duty to determine a matter clearly within its jurisdiction and same should be exercised with caution." *In re Commonwealth Oil Refining Co., Inc.,* 461 F.Supp. 284, 17 C.B.C. 715, 729 (Bkrtcy.W.D. Tex.,1978); *see also In re United Button Co.,* 137 F. 668 (D.Del.1904); *In re Bankers Trust,* 403 F.2d 16, 23 (7th Cir. 1968). Furthermore, a bankruptcy court's decision to transfer or not to transfer a Chapter 11, where venue is proper, is discretionary [3] and must be made on a case-by-case basis. *In re Tonkawa Refining Co.,* 502 F.2d 1341, 1343 (10th Cir. 1974); *see also Matter of Commonwealth Oil Refining Co., Inc.,* 596 F.2d 1239, 1247 (5th Cir. 1979).

In examining the phrase "in the interest of justice and for the convenience of the parties," a number of bankruptcy courts have adopted a set of factors which have proved beneficial in their determinations. Those factors are:

1. The proximity of all creditors to the court;

2. The proximity of the debtor to the court;

3. The proximity of witnesses and the books and records to the court;

4. The location of the debtor's assets;

---

**3.** § 1475. Change of venue. A bankruptcy court *may* transfer a case under title 11 or a proceeding arising under or related to such a case to a bankruptcy court for another district, in the interest of justice and for the convenience of the parties. (Emphasis added).

5. The economic administration of the estate; and

6. The necessity for ancillary administration in the event of bankruptcy.

*In the Matter of Louis Marx & Co., Inc.,* supra; *In re Commonwealth Oil Refining Co., Inc.,* supra; *In re Macon Uplands Venture,* 2 B.R. 444, 5 B.C.D. 1279 (Bkrtcy.D. Md.1980).

In examining the weight accorded these six factors, several courts have singled out one as having the most logical importance: the question of whether the transfer would promote the efficient and economic administration of the estate. *Commonwealth Oil Refining Co., Inc.,* 17 C.B.C. at 730; *In re Triton Chemical Corp.,* 46 F.Supp. 326, 329 (D.Del.1942); *In re United Button Co.,* 137 F. 668 (D.Del.1904).

■ Based upon the evidence presented, this Court concludes that the administration of the debtor's estate as a Chapter 11 case would best be accomplished in Columbus, Ohio. Testimony offered by the debtor shows that the management of the debtor moved the debtor's business records and other material to the Columbus area in 1980 in an effort to establish a new base of operations whereby the sale of property of the debtor could be best accomplished. In addition, even though in early 1980 the debtor was involved in unlicensed advertising for the sale of its condominium units in Ohio, this is also evidence of the debtor's intention to establish business operations and to locate its management personnel in this state. As the management of the debtor has located itself in Ohio and has continued to negotiate the sale of the debtor's assets from its office within this district, the Court concludes that it would be most efficient for the administration of this Chapter 11 case to take place within this district.

Two other factors favoring the position of the debtor are: (1) the proximity of the debtor to the Court and (2) the proximity of witnesses and the books and records of the debtor to the Court. This Court has already determined that the debtor has established new business offices within this jurisdiction. As a matter of course with such a move, the management of the debtor apparently transferred itself and much of the debtor's books and records to the debtor's Reynoldsburg offices. It would thus seem appropriate and highly advantageous for the debtor to be able to avail itself of the close proximity of this Court, rather than in having the debtor's management periodically remove itself and pertinent files and papers to a distant forum. These occasional travelings by the debtor's management personnel, as potential witnesses in the Chapter 11 case, between Ohio and South Carolina would merely accelerate the depletion of the finances the debtor seeks to use for rehabilitation.

Clearly, the factor most favorable to the position of the moving parties is the location of the debtor's assets, which are obviously the condominium units in South Carolina. This, however, is merely one factor and must be weighed in conjunction with other factors.

In terms of determining the proximity of creditors to the court, the courts have favored several different approaches. Some have concluded that total dollar amounts of the claims held by creditors is controlling. *Commonwealth Oil Refining Co., Inc.,* 17 C.B.C. at 731; *Clark Bros. Co. v. Portex Oil Co.,* 113 F.2d 45 (9th Cir. 1940). Others have given primary emphasis to the total number and geographical location of creditors. *In re Birchminster Corp. of California,* 6 B.R. 258, 6 B.C.D. 976, 977 (Bkrtcy.E. D.Pa.,1980); *In the Matter of Gulf Mfg. Corp.,* 4 B.C.D. at 523. Still another court made its determinations based upon giving equal weight to both criteria. *In the Matter of Louis Marx & Co.,* 6 B.C.D. at 301–302; *In re Commonwealth Oil Refining Co., Inc.,* 596 F.2d at 1248.

This Court agrees with the Fifth Circuit, which in *In re Commonwealth Oil Refining Co., Inc.,* supra, concluded that "[b]oth number and size are of equal significance in gaining acceptance of a plan and should be of equal significance in considering the convenience of the creditors." *In re Commonwealth Oil Refining Co., Inc.,* 596 F.2d at 1248.

In its schedules the debtor lists a total of 58 creditors, with claims totaling $344,586.53. Of that list, in comparison with other states, South Carolina had the greatest number of creditors, with a total of 14. North Carolina was second with a total of 11 and Ohio was third with a total of 10. The remaining 23 creditors were spread out in a number of states, most of which are located in the upper and lower regions of the Eastern seaboard and on into parts of eastern Canada. In terms of the size of claims, however, creditors from Ohio clearly had the largest total of claims, with claims totaling $142,708.72. In comparison, the combined claims of creditors from North and South Carolina only totaled $105,844.93. All other claims totaled $96,032.88.

These figures show that although the debtor has a large number of creditors residing in North and South Carolina, the total size of creditors' claims from Ohio is substantially larger than the total size of creditors' claims from both North and South Carolina. For these reasons, the Court finds that the two factors—size and amount of creditors' claims—are fairly well-balanced. As such, the Court finds the issue of the convenience of the creditors to be inconclusive since whereas one group of creditors—i.e., those in which number is essential—will possibly benefit from the transfer of this case to the District of South Carolina, another group—i.e., those in which total size is the important factor— will possibly suffer by the transfer.

Finally, the Court examines the sixth factor—i.e., the necessity for ancillary administration in the event of bankruptcy. The possible failure of the Chapter 11 debtor is an inherent risk in such proceedings. Often times corporate debtors have merely chosen to proceed under Chapter 11 rather than Chapter 7 only after difficult consideration of the various alternatives. However, it is the position of this Court that consideration of the possible liquidation of the debtor should be discounted unless the likelihood of such an event is evidenced by more than a mere possibility. In Chapter 11 cases, the bankruptcy court must concern itself with the rehabilitation of the debtor; anticipa-tion of its failure without clear evidence supporting such an event is not necessary. *Accord, In the Matter of Commonwealth Oil Refining Co., Inc.,* 596 F.2d at 1248; *In re Fairfield Puerto Rico, Inc.,* 333 F.Supp. at 1191.

Here little, if any, evidence has been offered suggesting that the debtor is headed towards failure or liquidation. Therefore, the Court finds that the sixth factor provides the Court with little or no guidance and is of no consequence in its determination in this case.

Based upon the foregoing, the Court, in its discretion, finds that it would not be "in the interest of justice and for the convenience of creditors" to transfer this case to the United States Bankruptcy Court for the District of South Carolina. Further, as stated earlier, the Court finds that venue is proper in this jurisdiction and the debtor's case shall remain in this jurisdiction.

IT IS SO ORDERED.