534

**In the Matter of L. F. POPELL CO., Inc., Debtor.**

United States District Court
S. D. New York.
Aug. 30, 1963.

O'Brien, Driscoll & Raftery, New York City, Edmund C. Grainger, Jr., and Harold Fischman, New York City, of counsel, for debtor.

Levy, Levy & Ruback and Martin Caine, New York City, Chauncey H. Levy, New York City, of counsel, for Unofficial Creditors' Committee.

Krause, Hirsch, Gross & Heilpern, New York City, Sydney Krause and Myron Kove, New York City, of counsel, for Delta Airlines, Inc. and J. Thomas Callahan Advertising, Inc.

FEINBERG, District Judge.

This is a motion to transfer a Chapter XI proceeding from this Court to a Federal District Court in Florida. L. F. Popell Co., Inc. ("the Debtor") filed a voluntary Chapter XI petition in this Court on July 26, 1963. On August 1, two creditors ("the objecting creditors") moved to transfer the proceeding under Section 32, subs. b and c of the Bankruptcy Act ("the Act"), 11 U.S.C. §

55, subs. b, c. Subsequently, at the request of the Debtor, the matter was adjourned to August 20, 1963, when it was argued.[1]

The essential facts do not appear to be in dispute. The Debtor is a Florida corporation which manufactures and sells coatings for buildings called Perma-Glaze and Perma-Cement. Its operation is a sizeable one, with over $3,300,000 in sales for the fiscal year ending November 30, 1962. It has offices in Miami, as well as its only manufacturing plant, its machinery, raw materials, and finished inventory. The rent for its Miami plant and offices is $59,100 per year.

In Miami, the Debtor presently employs approximately seven people in its production process and nineteen people in administrative and clerical work; about four months ago the total number employed in Miami was approximately sixty. According to the latest information in the record, the Debtor's principal bank account, along with six others, was located in Dade County, Florida; the Debtor has no bank account in New York City. The Debtor also has had a telephone line in Miami covering forty-nine states on a twenty-four hour basis. The cost of this special telephone service, allowing the Debtor to call any location in these states at no additional expense, was approximately $2,000 a month, and business of the Debtor was conducted through this system.

Although the Debtor apparently has not qualified to do business in New York, it has leased a furnished apartment in a residential New York City building. This standard form apartment lease, providing for a three year term, is dated January 7, 1963, and is made out to the L. F. Popell Co., Inc., of 2501 North-west 15th Street, Miami 47, Florida. The apartment is used for conferences with and entertainment of potential customers and distributors by the Debtor's Atlantic seaboard sales representative. At the apartment, which is listed under the corporate name in the New York telephone directory, the Debtor keeps accounting, sales, and other records, although its original corporate records are kept in Miami. The premises are also used by the Debtor's president who is in New York approximately three days out of every week.

With regard to the Debtor's creditors who are not stockholders, the following appear to be the facts. There are apparently slightly more creditors over $1,000 in the Florida area than there are in the New York area. By far, the greater number of small creditors are also in the Florida area. The claims of Florida creditors are apparently somewhat greater in total dollar amount than the claims of New York creditors. According to the papers, more creditors in total dollar amount prefer to have the Chapter XI proceeding continue in this District, although a substantial number of individual creditors do not.

In addition to the above, other factors are urged by the parties as being relevant. It is claimed that if the proceeding is transferred to Florida, a receiver will be almost automatically appointed, whereas the contrary is the case in this District. Also, the Debtor is presently negotiating to obtain new capital from a firm which prefers the proceedings to remain here.

Under Section 32, sub. b of the Act, 11 U.S.C. § 55, sub. b, the proceeding may be transferred to a court in which it could have been brought if venue in

1. Because the objecting creditors were concerned that actions taken during the adjournment period would then be urged by the Debtor upon argument as grounds for denying the motion to transfer, the order adjourning the matter provided that:

"No action or proceedings taken by the debtor or any party in interest during the two-week interval until a hearing shall be had on said motion * * * shall constitute grounds for retaining jurisdiction in this Court and the said adjournment and any action or proceedings taken shall be entirely without prejudice to the rights of the moving applicants on this motion."

this District is improper. This Section provides as follows:

"(b) Where venue in any case filed under this Act is laid in the wrong court of bankruptcy, the judge may, in the interest of justice, upon timely and sufficient objection to venue being made, transfer the case to any other court of bankruptcy in which it could have been brought."

However, the Debtor first argues that venue here is proper under Section 2, sub. a(1) of the Act, 11 U.S.C. § 11, sub. a(1) and therefore Section 32, sub. b does not apply. Section 2, sub. a(1) vests jurisdiction in courts of bankruptcy to:

"Adjudge persons bankrupt who have had their principal place of business, resided or had their domicile within their respective territorial jurisdictions for the preceding six months, or for a longer portion of the preceding six months than in any other jurisdiction."

The Debtor urges that it resided in this District within the six months preceding the filing of its petition and therefore venue is proper.

It should be noted that this contention was not made in the original Chapter XI petition filed by the Debtor. The petition alleged that the Debtor had its principal office and principal place of business in this District within the preceding six months, a position not supported by the facts. The petition did not allege that the corporation "resided" in this District. However, whether an afterthought or not, the Debtor's residency argument should be decided on the merits.

The Debtor urges that a corporation, for purposes of bankruptcy venue, has a residence apart from its domicile and that Section 2, sub. a(1) should be construed accordingly. It seeks to draw support from 28 U.S.C. § 1391(c), a venue provision applicable to corporations generally. That section provides:

"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

The Debtor argues that since it is doing some business in this District, venue is proper here even though this is a bankruptcy proceeding with a different venue statute.

However, in 1 Collier, Bankruptcy ¶ 2.19, at 200 (14th ed. 1962), it is pointed out that:

"A distinction between natural persons and corporations is avoided in § 2a(1) by use of the generic term 'persons,' which by reference to its definition in § 1(23) [of the Act], embraces corporations. It might seem, therefore, that even as to corporations, residence and domicile are separate and alternative bases for laying the proper venue. But, in fact, residence and domicile must be identical unless a corporation can be said to reside wherever it is doing *some* business. Such a test would render ineffective the 'principal place of business' requirement. A more sensible interpretation in line with jurisdictional cases would treat the residence and domicile of a corporation as one; and the domicile as the state or states of the corporation's incorporation."

This view appears to me to be the correct one. To begin with, 28 U.S.C. § 1391(c) clearly does not apply to bankruptcy proceedings so that any argument based upon it must proceed on the basis of analogy only. In the Matter of Elk City Placer Mines, Inc., 171 F.Supp. 894 (D.Idaho 1959). Therefore, the Debtor's argument is, in effect, that under Section 2, sub. a(1) of the Act a corporation "resides" wherever it does business. However, this proves too much. Not only, as indicated above, does this make redundant the concept of principal place of business in Section 2, sub. a(1), but it similarly emasculates use in that section of the concept of domicile.

Under Section 1391(c), residence is defined in terms of three concepts: the district in which a corporation is incorporated, licensed to do business, or is doing business. If all of these—and the Debtor does not point out why the analogy drawn from 1391(c) should be limited to the concept of doing business alone—are to be considered as embraced by the concept of residence in the bankruptcy venue provision (Section 2, sub. a(1)), then there is no need in that provision for any reference to domicile. Therefore, the analogy to Section 1391 (c) is inappropriate. Finally, Section 2, sub. a(1) clearly uses concepts which may or may not apply depending upon whether the bankrupt is an individual or a corporation, and residence is one of them. Cf. Higgins v. State Loan Co., 72 App.D.C. 328, 114 F.2d 25 (1940); In re Price, 231 F. 1001 (S.D.N.Y.1916); In re Lipphart, 201 F. 103 (S.D.N.Y. 1912). As applied to a corporation in that section, it adds nothing.

From all of the above, it seems reasonably clear to me that venue in this District is improper under Section 2, sub. a(1), since the Debtor's domicile and principal place of business are elsewhere.

■■ Since venue is improper, Section 32, sub. b of the Act comes into play, but the Debtor alternatively argues that the Court should not exercise its power to transfer the proceedings. Section 32, sub. b provides that in cases of improper venue the judge may "in the interest of justice" transfer the proceeding to a court in which it could properly

have been brought. Section 32, sub. b does not explicitly provide that a court may retain jurisdiction over the proceeding even though venue is improper. However, the legislative history of the Act and subsequent judicial interpretation make clear that the Court does have such power[2] which the Debtor urges it to exercise. However, such discretion to retain jurisdiction should be exercised with great caution and in few cases. See In the Matter of S. O. S. Sheet Metal Co., 297 F.2d 32 (2 Cir. 1961).[3] The appropriate test has also been stated to be that the Debtor "must make at least as strong a case for retaining the proceedings in the unauthorized * * * district as would have been necessary to warrant a transfer to the unauthorized * * * district" from a district in which the petition could originally have been brought.[4] Under this approach and keeping in mind the interests of all parties, the proximity of creditors, the Debtor, and witnesses to the District Court in Florida, the location of the assets and the economic administration of the estate, it appears to me that transfer should be granted. See In re Flexton Corp., 208 F.2d 869 (2 Cir. 1953). The problem of distance is highlighted, for example, by the companion motion of the Debtor to require the objecting creditors to pay the round trip transportation and legal fee of $500 per day to an attorney representing the Debtor to attend the deposition of four of the Debtor's officers noticed by the objecting creditors to be taken in Miami. Disposition of this motion was worked out in Court, but the

2. In the Matter of Hudik-Ross Co., 198 F.Supp. 695, 698 (S.D.N.Y.), aff'd, 297 F.2d 32 (2 Cir. 1961); In the Matter of Fada Radio & Elec. Co., 132 F.Supp. 89, 90 (S.D.N.Y.1955). See H.R.Rep. No. 2320, 82d Cong., 2d Sess. 7 (1952), U.S. Code Congressional and Administrative News 1952, p. 1960.

3. Cf. the following from the Report of the House Judiciary Committee, which accompanied the bill leading to the enactment of Section 32, subs. b and c of the Act.

"Under this first subdivision, the judge may upon timely and sufficient objection

transfer a case brought in the wrong court of bankruptcy. * * * Ordinarily, no doubt the venue rules in bankruptcy will serve the interest of justice, but in the event that in the special case they do not, the judge will have discretion to retain the proceeding."
H.R.Rep. No. 2320, 82d Cong., 2d Sess. 7 (1952), quoted with approval in In the Matter of Fada Radio & Elec. Co., supra note 2, at 90.

4. In the Matter of Fada Radio & Elec. Co., supra note 2, at 92.

complications resulting from attempting to administer here the affairs of a Debtor whose activities are principally based in Miami are evident.

 The fact that a receivership may occur if the case is transferred to the United States District Court for the Southern District of Florida, Miami Division, does not appear to me to be a ground for this Court to retain a case wrongly brought before it. In the Matter of Fada Radio & Elec. Co., supra, 132 F.Supp. at 93. The fact that a company with whom the Debtor is presently negotiating feels that "it would be much more convenient for the proceedings to continue in New York"[5] does not appear to be too significant. The negotiations are clearly only in the talking stage, and the chief executive officer of the Debtor is in New York frequently so that negotiations may continue. In any event, on the facts presented to me, a contingency so uncertain should not be of controlling significance. Actually, the most that can be said for the Debtor's position on the facts of this case is that this Court should retain jurisdiction because apparently more creditors than not in dollar amount desire it to do so. Apart from the difficulty of assessing with accuracy the number and amount of claims of creditors at this early stage in the proceedings and, for that matter, their real position,[6] this factor on the record before me simply does not persuade me to retain jurisdiction. On the whole record, the interest of justice is best served by transferring this case to Florida.

Cases of this sort which require an exercise of discretion frequently, if not almost always, depend in the last analysis upon their precise facts. Therefore, I do not feel that the result reached in this case is inconsistent with cases,

distinguishable on their facts,[7] cited by the Debtor where transfer was denied.

Petition to transfer under Section 32, sub. b granted. For this reason it is unnecessary to deal with the request to transfer under Section 32, sub. c. Submit order on notice.

---

5. See Exhibit E attached to Debtor's Answer to Petition to Transfer Proceedings.

6. Note the changing position in this proceeding of a substantial stockholder and owner of the Debtor's debentures, who filed an affidavit supporting one view on

venue and later sent a telegram to the Court urging a different result.

7. E. g., Capitol Motor Courts v. LeBlanc, 201 F.2d 356 (2 Cir.), cert. denied, 345 U.S. 957, 73 S.Ct. 940, 97 L.Ed. 1378 (1953); In the Matter of Dardick Corp., No. 61 B 932, S.D.N.Y., March 8, 1962.