**In the Matter of KERR'S INC., Klaus Department Stores, Inc., Crosby Bros., Inc., Blum's Vogue, Inc., and Emporium Department Stores, Inc., Debtors.**

**No. 66 B 91.**

United States District Court
S. D. New York.
April 19, 1966.

Seligson & Morris, New York City, for applicants.

Finke, Jacobs & Hirsch, New York City, for debtors.

THOMAS F. MURPHY, District Judge.

Three unsecured creditors of Emporium Department Stores, Inc. move to sev-

er and transfer a Chapter XI proceeding insofar as it affects Emporium, one of five debtors in a joint petition for arrangement filed February 14, 1966. A fourth creditor, the landlord of Emporium, joins in the motion. In the alternative they move to dismiss the petition.

Considering the absence of any statutory authority for such a joint petition, it is artfully and skillfully drawn.

Kerr's Inc., a Delaware corporation licensed to do business in New York, actually operates two large retail stores in Oklahoma and owns all the stock of the other four debtors who operate retail stores in Illinois, Kansas and Minnesota, none of whom reside or are domiciled or do business in New York. Thus, in a single petition five corporate debtors are seeking Chapter XI reorganization and at least four of them have no residential or business affinity with New York. Five filing fees were paid.

The four creditors of Emporium who timely move to sever and transfer the proceeding, insofar as it affects Emporium, to the United States District Court for the District of Minnesota, Third Division, have shown without contradiction that Emporium is a Minnesota corporation operating three retail stores in St. Paul, Minnesota; that although its stock is owned by Kerr's it is admittedly autonomous; that all its assets are in Minnesota; that its operating officers, president, vice president and general operations manager and controller, and its books and records are all in St. Paul, Minnesota. It has only two bank accounts, one in St. Paul and the other in Chicago.

Against such uncontested facts it is argued by Kerr's that "the operations of each of the debtors are so intertwined with the others, because of the existence of cross-guarantees, advances to and from parent and subsidiaries, and because of the assignment by each of the debtors (except Klaus) of their accounts receivable, the proceeds of which were paid to Kerr's Inc. which distributed them to the various subsidiaries without regard to their source, it is obvious all of these corporations require the supervision, not only of one committee of creditors but of one court."

It points out that "with respect to Emporium, 403 creditors are located in New York City, or the metropolitan area, which are 45% of the total number of creditors; that there are but 199 creditors in St. Paul which is but 22.7% of creditors in number; and that there are 284 creditors whose offices are not in either area, aggregating 32.3% in number. With respect to the dollar amount of creditors 18.8% have their offices in the City of New York aggregating $323,-600; 18.6% of the creditors have their offices in or about St. Paul their claims aggregating $320,800; and that all other creditors amounting to 62% of the liabilities or $1,077,100 are in neither area."

Obviously venue, insofar as Emporium is concerned, is laid in the wrong court of bankruptcy since it neither has its principal place of business nor has it resided or had its domicile within this district at any time. (Cf. § 322 and § 2a (1) of the Bankruptcy Act, 11 U.S.C. §§ 722 and 11).

There remains, however, the question of whether the interests of justice and the parties can be best served by severing and transferring the proceedings, insofar as Emporium is concerned, to the United States District Court, District of Minnesota, Third Division, pursuant to § 32(b), (c) of the Bankruptcy Act, 11 U.S.C. § 55(b), (c).

In assessing the various factors to be considered we think it important, also, to consider how weak Kerr's New York "contacts" are. This is important because with regard to the other four corporate debtors there is just no residential or business nexus with New York. Kerr, as we stated, actually operates two department stores in Oklahoma but claims that its principal place of business for the last six months is New York. This allegation is based on the fact that its president, general manager, secretary and general counsel are inhabitants of New York, and that they are the policy

making directors not only for Kerr's but for all of the four other debtor corporations whose stock it owns. It has an office of four rooms at 11 West 42nd Street, approximately 40' by 20', which is shared by various other entities; it pays $6000 rent per year on a lease that expires in October; it is staffed by five employees. It receives all the money from each of its subsidiaries assigned accounts receivable and disburses whatever money is needed to each without regard to the assigned accounts. In short, it is the policy making head and the source of working capital for each of the subsidiaries.

If the primary motion here was to dismiss for lack of jurisdiction we would be inclined to grant it. Cf. L. F. Popell Co. Inc. v. Delta Air Lines Inc., 323 F.2d 50, 51 (2d Cir. 1963) affirming, 221 F. Supp. 534 (S.D.N.Y.1963); Kelly v. United States Steel Corp., 284 F.2d 850, 853 (3d Cir. 1960). When we consider, therefore, Kerr's weak position insofar as its affinity with New York and the other factors, i. e., the proximity of creditors to the court; the proximity of the bankrupt to the court; the proximity to the court of witnesses necessary to the administration of the estates; the location of assets and the economical and efficient administration of the estates, In re Triton Chemical Corp., 46 F.Supp. 326, 329 (D.Del.1942), we are really concerned with only the last—the economical and efficient administration of the estates, all the other factors favoring the court in Minnesota. To this must be added the fact that the creditors' committee took no position, for or against the motion.

■ Since a plan will have to be offered for each of the five debtors and each will have to be treated separately, we find it hard to understand why all of that should be consummated in New York. There appears to be almost as many creditors in dollar amount in St. Paul as there are in New York insofar as Emporium is concerned. The landlord in St. Paul has a number of leases that will certainly be affected and, of course, if no acceptable plan is able to be devised and Emporium is adjudicated a bankrupt it will in the end have to be administered by the court in Minnesota.

On balance, and adhering to the injunction of the Court of Appeals that "[w]hile discretion to retain jurisdiction in the 'interests of justice' should be exercised with great caution and in few cases," In re S.O.S. Sheet Metal Co., Inc., 297 F.2d 32 (2d Cir. 1961), we are compelled to hold that Emporium should be severed and transferred to Minnesota where the interests of justice and the parties will be best served.

Settle order.