In the Matter of Richard H. M. MAIDMAN, not Individually but as Trustee under that certain land trust agreement dated December 19, 1975 known as "Trust Number 2", Debtor.

Bankruptcy No. 79 B 043.

United States Bankruptcy Court,
S. D. New York.

Feb. 1, 1980.

Wachtell, Lipton, Rosen & Katz, New York City, for Compass Investment Group; Lawrence U. Cherkis, Theodore Gewertz, Richard D. Feintuch, New York City, of counsel.

Gelberg & Kronovet, New York City, for Jomar Hotel Corp.; Marc S. Kirschner, New York City, of counsel.

Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, for Richard H. M. Maidman, not individually but as Trustee; Richard Lieb, Laurence J. Kaiser, New York City, of counsel.

## OPINION

JOEL LEWITTES, Bankruptcy Judge.

This decision is occasioned by several motions by Compass Investment Group ("Compass"),[1] a secured creditor of a Chapter XII "debtor", Richard H. M. Maidman, as Trustee under a land trust agreement dated December 19, 1975 ("petitioner")[2] which challenge, alternatively, this Court's subject matter jurisdiction as well as the venue of this Chapter XII case.[3]

## I

### Subject Matter Jurisdiction

#### (A)·

Both Compass and Jomar[4] predicate their dismissal motions on two grounds: (1) that Richard H. M. Maidman, as Trustee, is not a

"debtor", and as such is not a proper petitioner under Chapter XII as defined by the Bankruptcy Act[5]; and (2) that there is no realistic prospect for the rehabilitation of the petitioner or for the submission by it of a viable or feasible plan of arrangement. We shall discuss these contentions seriatim.

#### (B)

### Is The Petitioner A Proper Debtor?

#### (1)

Bankruptcy Act § 406(6) states that

" 'debtor' shall mean a person, other than a corporation as defined in this Act [Bankruptcy Act § 1(8), 11 U.S.C. § 1(8)], who could become a bankrupt under section 4 of this Act [11 U.S.C. § 22], who files a petition under this chapter [XII] and who is the legal or equitable owner of real property or a chattel real which is security for any debt . . . ."

This statutory provision plainly contains three essential requirements that a petitioner must necessarily meet before being accorded the status of a "debtor" under Chapter XII. Such petitioner must be one who: (1) is not a corporation; (2) could become a bankrupt under Bankruptcy Act § 4; and (3) is a legal or equitable owner of real property or a chattel real which is security for any debt.[6]

Compass, quite properly, does not dispute that the petitioner: (a) is *not* a corpora-

1. Compass was formerly known as Barnett Winston Investment Trust. Compass is the holder of a first mortgage dated March 29, 1973 in the original principal amount of $4,250,000 covering premises known as the Barcelona Hotel and the International Hotel located in Miami Beach, Florida. In January 1978 Compass commenced a foreclosure action against the petitioner and others in Florida State Court which, by reason of Bankruptcy Rule 12–43(a), 421 U.S. 1116, was stayed by the filing of this Chapter XII case.

2. The petitioner filed its Chapter XII petition on January 9, 1979, in accordance with the provisions of Bankruptcy Act § 406(9), 11 U.S.C. § 806(9), and Bankruptcy Rule 12–6, 421 U.S. 1094.

3. Jomar Hotel Corp., the lessee of a portion of the Barcelona Hotel, under a lease with the Florida state foreclosure receiver, has also

moved to dismiss this case on the ostensible ground that this Court lacks subject matter jurisdiction. It has not moved for a change of venue. Although the petitioner attacks the standing of Jomar to seek dismissal of this case, in view of this court's determination here, we do not reach such challenge. For the sake of clarity and brevity, with respect to the question of subject matter jurisdiction, we will generally refer only to Compass' motion although we are, of course, aware that Jomar joins in such motion and has filed its separate memoranda of law in support thereof.

4. See footnote 3, *supra*.

5. Bankruptcy Act § 406(6), 11 U.S.C. § 806(6).

6. *Walker v. Federal Land Bank of Columbia*, 468 F.Supp. 831, 832 (M.D.Fla.1979).

tion [7] or (b) except as noted *infra* in subdivision (3) of this portion of the opinion, *is* technically the legal or equitable owner of real property.[8] Rather, the controversy in the main, focuses upon the disarmingly difficult question of whether the petitioner here could become a bankrupt under Section 4 of the Bankruptcy Act and therefore a Chapter XII debtor.

Bankruptcy Act §§ 4a and 4b define, respectively, who may become a voluntary and involuntary bankrupt. Since the class of those eligible for voluntary relief is broader than that enumerated for eligible bankrupts in involuntary proceedings,[9] the proper focus of our inquiry here necessarily should be the requisite eligibility for voluntary relief under Bankruptcy Act § 4a.[10]

Bankruptcy Act § 4a extends voluntary relief in bankruptcy to

"[a]ny person, except a municipal, railroad, insurance or banking corporation or a building and loan association . . ."

The definition, under the Act, of a "person"

"*shall include* corporations, except where otherwise specified, and officers, partnerships and women . . . ." [11]

■ Although the original point of departure in the construction of a statute "is the language itself",[12] where, as here, the

---

7. The petitioner is a Florida land trust, commonly referred to as an "Illinois Land Trust", which contemplates that title to real property is taken in the name of a trustee under a recorded deed of trust. This deed of trust grants broad powers to the trustee to generally deal with the property as if it were the trustee's. There is an express provision in such deed that third parties, who deal with the trustee, are relieved of any obligation to inquire, *inter alia*, into the authority of the trust's real property. There is, as well, an unrecorded trust agreement between the trustee and the beneficiaries. The latter's interest is limited to the earnings and avails of the property and is deemed to be one in personal property only. Some of the reasons for such device is the privacy of ownership and the avoidance of probate. Such trust, avoids, as well, the Statute of Uses. See Fla.Stat.Ann. § 689.071 (West); *Grammer v. Roman*, 174 So.2d 443, 445 (Fla.App.1965); *In re Romano*, 426 F.Supp. 1123 (N.D.Ill.1977); Garrett, *Land Trusts*, Current Real Estate Problems 663 (Winter 1955); Caplan, *Land Trusts*, 12–14 (2d ed. 1958); McKillop II, *The Illinois Land Trust In Florida*, 13 U. of Fla.L.Rev. 173 (1960).

Such land trust, accordingly, is quite unlike the so-called Massachusetts or business trust which has transferable shares and which is specifically included within the statutory definition of a "corporation" under Bankruptcy Act § 1(8), 11 U.S.C. § 1(8). See *Cantor v. Wilbraham and Monson Academy*, 609 F.2d 32 (1st Cir. 1979). For the very same reason petitioner is not a real estate investment trust. See 26 U.S.C. § 856(a)(2) (1979 Supp.) (Internal Revenue Code).

8. Under the Florida statute, trustees of land trusts are vested with the "full rights of ownership over . . . real property or interest therein . . . ." Fla.Stat.Ann. § 689.071(1) (West); *Taylor v. Richmond's New Approach*

---

*Ass'n., Inc.*, 351 So.2d 1094, 1096 (Fla.App. 1977) *cert. denied*, 366 So.2d 885 (1978); *Mayo v. Barnett Bank of Pensacola*, 448 F.Supp. 250, 252 (N.D.Fla.1978); *In re Romano, supra* at 1127.

9. See *In re Phila. Consistory Sublime Princes Royal Secret 32 Degree etc.*, 40 F.Supp. 645, 647 (E.D.Pa.1941) (cited and quoted with approval in 1 Collier on Bankruptcy ¶ 4.06 at 602–603 [14th ed. 1976]). See also 1 Remington on Bankruptcy § 52 at 106 (5th ed. 1950).

10. This analysis necessarily and, we are convinced, quite correctly, dilutes the significance of pronouncements of certain courts, relied upon by Compass, in connection with the issue posed here. Those cases, which we will review *infra*, in the main, concerned themselves with the eligibility requirements for bankrupts in involuntary cases which would improperly set delimiting standards for the question presented here.

11. Bankruptcy Act § 1(23), 11 U.S.C. § 1(23) (emphasis supplied). Although the term "officer" enumerated in that provision is defined further in Bankruptcy Act § 1(22), 11 U.S.C. § 1(22), *inter alia*, as a "trustee", it is clear that such trustee refers not to a private trustee but rather to one who acts pursuant to an order of the Court. See 1 Collier on Bankruptcy ¶ 1.22 at 130.16–130.17 (14th ed. 1976).

12. *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979). Moreover, "[t]hough we may not end with the words in construing a disputed statute, one certainly begins there." F. Frankfurter, *Some Reflections on the Reading of Statutes* 16 (1943) (Quoted most recently in *Andrus v. Allard*, —— U.S. ——, 100 S.Ct. 318, 62 L.Ed.2d 210 [1979]).

words of the statute do not advance the inquiry, we must, necessarily, resort to generally accepted principles of statutory construction and seek enlightenment within the "context" of the enactment.[13] This we shall now proceed to do, in reverse order.

The two dominant themes of the Bankruptcy Act are: (1) to provide the honest debtor with an opportunity to discharge himself of oppressive debt, i. e. "to start afresh"[14]; and (2) to equally distribute the bankrupt's assets among his creditors and thereby avoid preferential, as well as fraudulent transfers.[15] Having said this, we are, of course, aware that these avowed goals "cannot be extended to achieve a result neither commanded by the statute nor consistent with its purpose. . . ."[16]

Accordingly where, for example, a contract may be disaffirmed by a petitioner on account of infancy[17] or by reason of its lack of power to incur an indebtedness,[18] voluntary resort to the Bankruptcy Court for relief (i. e. a discharge) is unnecessary, futile and properly denied.

Additionally, Bankruptcy Act § 4a, relating to the qualification for voluntary bankrupts, must be read to reflect "a division of power between the federal government and the states."[19] This interpretative reading not only explains the statutorily exempted corporations, which are particular subjects of state or federal regulation,[20] but accounts for as well, the apparent disqualification, by decisional law, of bankruptcy relief to insolvent petitioners whose liquidation is otherwise regulated exclusively by state statute.[21]

None of these considerations, necessitating a denial of the relief provisions of the Bankruptcy Act to voluntary bankrupts, apply to the petitioner here.[22] The Trustee,

---

**13.** *Andrus v. Allard, supra.*

**14.** *Kokoszka v. Belford,* 417 U.S. 642, 645–6, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974); *Burlingham v. Crouse,* 228 U.S. 459, 473, 33 S.Ct. 564, 57 L.Ed. 920 (1913); *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). To the extent, of course, that the honesty of the debtor is placed in issue, a creditor may choose either to bar the discharge of the bankrupt entirely, Bankruptcy Act § 14c, 11 U.S.C. § 32c, or seek to bar discharge of only the debt itself. Bankruptcy Act § 17, 11 U.S.C. § 35. *Cf. Danns v. Household Finance Corp.,* 558 F.2d 114, 115 (2d Cir. 1977). Neither of these two possible routes, however, bear upon the question of the availability, in the first instance, of a debtor's access to the bankruptcy court.

**15.** *Israel-British Bank (London) Ltd. v. Federal Deposit Insurance Corp.,* 536 F.2d 509, 513 (2d Cir.), *cert. denied,* 429 U.S. 978, 97 S.Ct. 486, 50 L.Ed.2d 585 (1976); Glenn on Liquidation 140 (1935).

**16.** *Matter of Nickerson & Nickerson, Inc.,* 530 F.2d 811, 814 (8th Cir. 1976) (citations omitted).

**17.** *In re Walrath,* 175 F. 243 (N.D.N.Y.1910).

**18.** *In re Manufacturing Lumbermen's Underwriters,* 18 F.Supp. 114, 125 (W.D.Mo.1936).

**19.** *Israel-British Bank (London) Ltd. v. Federal Deposit Insurance Corp., supra* at 513.

**20.** *I. e.* municipal, railroad, insurance, or banking corporations or a building and home loan association. See Bankruptcy Act § 4a, 11 U.S.C. § 22a.

**21.** Thus the purposes of the Bankruptcy Act "do not require the application of bankruptcy proceedings to estates of deceased persons . . . ." *In re Estate of Hiller,* 240 F.Supp. 504 (N.D.Cal.1965). See also *United States v. Kras,* 409 U.S. 434, 450, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973) (Burger, C. J., concurring). ("Like the descent and distribution of property for which all States have provided statutes and probate courts, the bankruptcy court is but one mode of orderly adjustment with creditors . . . ."). *But see* Nadler, *Bankruptcy Courts' Refusal to Assume Jurisdiction Over Insolvent Decedent Estates: A Rebuttal,* 26 Fordham L.Rev. 1 (1958).

**22.** Much heat has been generated by the parties to this dispute as to who, in fact, is the "debtor" here. Compass maintains that the land trust is the filing debtor here; the petitioner argues alternatively that Richard Maidman, as trustee, is the debtor, but that even if the land trust is properly the debtor, the land trust may file the instant Chapter XII petition.

That the "debtor" is the land trust is made clear in the recent pronouncement by the Court in *Cantor v. Wilbraham and Monson Academy, supra,* footnote 7. There the Court pointedly observed that the definition of those entitled to become a Chapter XII debtor cannot be impermissibly extended by allowing ". . . a

on behalf of the land trust, is specifically empowered, by the terms of the trust agreement, to contract and thereby incur obligations which may be satisfied from trust property.[23] Moreover, apart from the Bankruptcy Act, there is no applicable state statute which provides either a parallel or exclusive mode for an orderly distribution of trust assets among creditors of an insolvent trust.

■ It follows, necessarily, from this analysis of the purposes of the Bankruptcy Act, that in the absence of either a specific prohibition by the terms of the Act or a competing forum which is uniquely empowered to distribute the assets of the estate, entrance to this Court, for relief, may not be barred to a petitioner who can, as here, legally benefit from the Act's provisions.[24] Thus, and quite consonant with this approach, the courts have indeed extended relief in the bankruptcy court to diverse and non-descript entities for which no specific enumerated provision therefor has been provided in the Act.[25] We are convinced that the petitioner here, similarly, is entitled to seek relief in this Court.

This conclusion is buttressed by resort to well-accepted principles of statutory construction.

■ In contrast to several other definitional sections set forth in the Bankruptcy Act,[26] Section 1(23) thereof, defining "person", employs the term "shall include" rather than the phrase "shall mean". It is clear that the first quoted clause is one of enlargement and extension unlike the second which is limited and restrictive.[27] Accordingly, when the verb "include" is utilized in a definitional section, it is generally improper, as does Compass here, to conclude that entities not specifically enumerated in the definition of "person" are to be excluded.[28]

■ Moreover, we must note that the Bankruptcy Act is an enactment remedial in nature and should therefore be accorded a liberal interpretation.[29] Thus, consistent with the applicable principles of

[land trust] trustee to secure treatment as an individual [*i. e.* a "person" who could become a bankrupt under Bankruptcy Act § 4] simply by stating the obvious—namely that as trustee he is the legal owner of the trust's real property and may be subject in certain circumstances to personal liability." *Id.* at 35.

**23.** The traditional view is that an action at law against a trustee in his representative capacity does not permit recovery against the trust estate since the trustee, absent an agreement to the contrary, does not sign for the cestui "or bind the cestui's property for the performance of the obligation." Bogert, *Trust and Trustees* § 712 at 448–450 (2d ed. 1960). A growing number of states have modified this rule either by statute or judicial fiat. *See e. g.* Johnston, Jr., *Developments in Contract Liability of Trusts and Trustees,* 41 N.Y.U.L.Rev. 483 (1966). In any event, an "Illinois Land Trust" would not be subject to the orthodox rule since such trust contemplates that the beneficiaries retain the power of direction over the trustee. Garrett, *Land Trusts* Current Real Estate Problems 665 (Winter 1955). In particular, the trust agreement here authorizes the trustee to contract on behalf of "Land Trust Number 2" and that any obligation incurred by him, in connection therewith, is limited to the trust property.

**24.** The reverse side of this proposition is that the Bankruptcy Act "envisions many things but perhaps the elimination of the 'Race to the Courthouse' by creditors is paramount." *In re Kanter,* 345 F.Supp. 1151, 1156 (C.D.Cal.1972). (District Court affirmance on the opinion of the bankruptcy referee).

**25.** *Highway and City Freight Drivers v. Gordon,* 576 F.2d 1285, 1291 (8th Cir.), *cert. denied sub nom. Gordon Transports Inc. v. Highway and City Freight Drivers,* 439 U.S. 1002, 99 S.Ct. 612, 58 L.Ed.2d 678 (1978) (cases cited).

**26.** See *e. g.* Bankruptcy Act §§ 1(2), (5a), (6), (7a), (8a), (9), (12), (13), (15), (17), (20), (24), (26), (27), (29a), and (32), 11 U.S.C. §§ 1(2) (5a), (6), (7a), (8a), (17), (12), (13), (15), (17), (20), (24), (26), (27), (29a) and (32), respectively.

**27.** See 9 Collier on Bankruptcy ¶ 2.01[2] at 752 (14th ed. 1976) (cases cited in footnotes 5 and 6 to the text of that treatise). See also *Helvering v. Morgan's Inc.,* 293 U.S. 121, 125 n.1, 55 S.Ct. 60, 79 L.Ed. 232 (1934).

**28.** *Highway and City Freight Drivers v. Gordon, supra* at 1289 (cases cited).

**29.** *Israel-British Bank (London) Ltd. v. Federal Deposit Insurance Corp., supra* at 513. See also 3 Sutherland on Statutory Construction § 60.01 at 29 (1974); *In re Carlson,* 292 F.Supp. 778, 784 (C.D.Cal.1968).

statutory construction, and upon my "[f]inding no Congressional purpose to command otherwise",[30] this non-corporate petitioner is a "person" which could become a bankrupt under section 4 of the Act and is therefore a proper debtor to file this Chapter XII petition.[31]

We do not find Compass' citations to the contrary persuasive.

(2)

Compass, in propounding its view that the petitioner cannot be a Chapter XII debtor, relies upon two reported decisions which have *directly* been addressed to that question.[32] Although these two cases squarely held that a land trust, virtually identical to the one at bar, was ineligible for Chapter XII relief, both decisions relied

upon, in our judgment, the faulty analysis of the court in *Associated Cemetery Management Inc. v. Barnes.*[33]

*Associated Cemetery* did not, as here, involve either a Chapter XII case or a land trust. Rather, the Court was faced with the question whether a profit sharing trust, which had filed a voluntary petition in bankruptcy was a "person" as defined in the Bankruptcy Act[34] where such trust apparently argued that it could qualify under that definition *only* on the ground that it was a corporation[35] and where the Court found that such trust did not evidence ownership by transferable certificates of interest. The Court, unsurprisingly, focused its attention solely upon the Act's definition of a "corporation"[36] and, in particular, to the

---

**30.** *Israel-British Bank (London) Ltd. v. Federal Deposit Insurance Corp., supra* at 515.

**31.** A "Chapter 12 has to do with real property arrangements by persons *other than* corporations." *In re Dick*, 296 F.2d 912, 913 (7th Cir. 1961) (emphasis supplied).

**32.** *Walker v. Federal Land Bank of Columbia*, 468 F.Supp. 831 (M.D.Fla.1979) and *In re Associated Developers Trust*, 9 C.B.C. 434 (D.Mass. 1976) (Bankruptcy Court). Without analysis or discussion one court, in passing, noted that a realty trust, which did not evidence beneficial ownership thereof by a certificate, would not qualify for Chapter XII relief since that Chapter "provides relief only for individuals and partnerships." *In re Fairbanks Realty Trust*, 40 F.Supp. 77, 78 (D.Mass.1941), *aff'd sub nom. Pope and Cottle Co. v. Fairbanks Realty Trust*, 124 F.2d 132 (1st Cir. 1941). We attach no significance to the gratuitous statement just quoted because the entity involved there was originally the subject of an involuntary petition and then subsequently filed for relief under Chapter X of the Bankruptcy Act. Accordingly, both the decisions in the District Court and the Court of Appeals were concerned solely with the status of that entity either as a target for an involuntary bankruptcy or as a Chapter X debtor. The availability of Chapter XII relief was not, in any manner, the subject of decision by either court.

It should be noted moreover, in this connection, that although the Court, as noted earlier, in *Cantor v. Wilbraham and Monson Academy, supra*, held that the land trust trustee there had apparently conceded that since that trust had transferable shares, the trust was, by definition, a corporation under Bankruptcy Act, § 1(8), 11 U.S.C. § 1(8), and thus not eligible for relief under Chapter XII.

In *Mayo v. Barnett Bank of Pensacola, supra*, although the Court held that a Florida Land Trust is an eligible Chapter XII debtor, it is quite clear that the Court reached that conclusion without analyzing whether such trust is a "person" that could be a bankrupt under § 4 of the Act. Similarly, in *In re Bloom*, 10 F.Supp. 806 (N.D.Ill.1935), in a case brought under the predecessor statute to Chapter XII (Bankruptcy Act § 74), the Court found a real estate trust eligible for relief solely on the ground that such trust was not a corporation. Both *Mayo and Bloom*, are unpersuasive by reason of their superficial analyses.

**33.** 268 F.2d 97 (8th Cir. 1959), *aff'g In re Associated Cemetery Management, Inc., Employee's Profit Sharing Trust*, 170 F.Supp. 298 (W.D.Mo. 1958).

**34.** Bankruptcy Act § 1(23), 11 U.S.C. § 1(23).

**35.** *Associated Cemetery Management Inc. v. Barnes, supra* at 100.

**36.** Bankruptcy Act § 1(8), 11 U.S.C. § 1(8) states that a

" 'corporation'
shall include all bodies having any of the powers and privileges of private corporations not possessed by individuals or partnerships and shall include partnership associations organized under laws making the capital subscribed alone responsible for the debts of the association, joint-stock companies, unincorporated companies and associations, and any business conducted by a trustee or trustees wherein beneficial interest or ownership is evidenced by certificate or other written instrument."

last clause thereof, which subsumed under that definition, business or Massachusetts trusts. The Court concluded, by reference, to the Act's definition of "corporation", that the private trust, under the circumstances there present, was not a "person" eligible for relief since

"Congress, through the use of this specific language [Bankruptcy Act § 1(8)], has singled out the Massachusetts trust as qualifying for bankruptcy proceedings, *thereby indicating that trusts generally are not within the purview of the Bankruptcy Act.* Absence of the required transferable certificates of interest is fatal to appellants' contention in this regard." [37]

This broad and sweeping statement by the Court, in the face of the narrow issue before it, the legislative history of the 1926 amendments to Bankruptcy Act § 1(8), and traditional principles of statutory construction, is unjustified.

As we noted earlier, the petitioning trust in *Associated Cemetery* neither maintained, nor did the Court there explore, the trust's status as a "person" who could become a bankrupt *other than* on the basis of that trust's sole allegation that it was a "corporation" within the terms of the Bankruptcy Act § 1(8).[38]

Moreover, the conclusion by *Associated Cemetery* that the inclusion of business trusts or Massachusetts trusts, which evidence ownership therein by a certificate or other written instrument, in the Act's definition of a "corporation" excludes *any other trust* from *voluntary* bankruptcy relief is simply wrong. Prior to the 1926 amendment of the Act's definition of "corporation" (which added within that definitional scheme, Massachusetts trusts), there was considerable authority, in decisional law, that such business organizations, as unincorporated companies, should properly be deemed to be a "corporation" for purposes of bankruptcy.[39] It seems clear, however, from the Congressional debates underlying consideration of the amendment to the Act's definition of "corporation" that Congress' desired goal, in adding such business trusts, within such definition, was not simply to ensure their denomination as corporations, but to ensure that the Massachusetts trust, as a corporation would be subject to *involuntary* petitions in bankruptcy.

Thus Congressman Michener stated:

"These proposed amendments are not in the way of innovations; they are simply declaratory of and for the strengthening of the present law, and *are directed to helping creditors help themselves to administer that law.*" [40]

It plainly appears that Congress' concern here was to permit creditors of Massachu-

---

**37.** *Associated Cemetery Management, Inc. v. Barnes, supra* at 101–2. (emphasis supplied).

**38.** This analysis, which, accurately reflects the posture and reasoning of *Associated Cemetery*, undermines the unsupported statement in *Matter of Associated Developers Trust, supra*, relied upon by Compass, that the Court in *Associated Cemetery* considered in the *totality*, whether the *Associated Cemetery* trust was a "person", "and held that it was not." *Matter of Associated Developers Trust, supra* at 436. Thus, in this regard, "the lack of a comprehensive analysis [by *Associated Developers*] renders the decision inapposite to the instant case." *Cf. Walker v. Federal Land Bank of Columbia, supra* at 834.

**39.** See *Pope & Cottle Co. v. Fairbanks Realty Trust, supra* at 134 for a short compendium of cases which so held. See also McLaughlin, *Amendment of the Bankruptcy Act*, 40 Harv.L. Rev. 341, 360 (1927).

**40.** 67 Cong.Rec. 7675 (1925). (emphasis supplied). To be sure, McLaughlin would have preferred merely an amendment to *former* Bankruptcy Act § 4(b) (who may become an *involuntary* bankrupt) so as to include, as an "unincorporated company", then subject to an *involuntary* petition, a "Massachusetts trust" or a "common law trust". McLaughlin, *supra* at 360. For the complete text of former § 4(b) of the Act see 1 Collier on Bankruptcy ¶ 4.14 at 609 (14th ed. 1976). See also *Pope and Cottle Co. v. Fairbanks Realty Trust, supra* at 134. Moreover, this legislation was mostly "the result of an agitation by the bar association and *Creditmen's leagues* for the correction of alleged evils existing in the administration of insolvent estates." Colin, *An Analysis of the 1926 Amendments to the Bankruptcy Act*, 26 Colum.L.Rev. 789 (1926) (emphasis supplied).

setts trusts and the like, by defining such entities as *corporations, to* invoke the remedial measures of the bankruptcy law by means of an involuntary petition which petitions, unlike voluntary petitions, were generally limited to *natural* persons and corporations.[41] One is hard put to explain, in view of this analysis, how the Court in *Associated Cemetery* so cavalierly assumed, without any support therefor, that trusts in property, *other* than a Massachusetts trust, *ergo* are outside the purview of the Act, *including voluntary petitions* in bankruptcy.

This last leap in logic can be further explained by the fact that the Court, in *Associated Cemetery*, failed to apply the proper principle of statutory construction, referred to earlier in this decision, where a statute, as here (Bankruptcy Act of § 1(23) defining "person"), contains the phrase "shall include". Since such verb as explained above, necessarily is one of enlargement and extension, for the Court, as it did in *Associated Cemetery*, to implicitly apply the maxim *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of the other), was improper.[42]

It is clear that since *Associated Cemetery* is the bedrock upon which Compass' main authorities for dismissal uncritically rest,[43] and because, as we have seen, for the purposes of this motion, such foundation is indeed planted upon a questionable legal proposition, reliance upon *Associated Cemetery* is not only hazardous, but unwarranted.[44]

Finally, we should note, that Compass has pointed out that the legislative history of the definition of "person" in the Bankruptcy Reform Act of 1978 [45] indicates that

" 'Person' is defined in [the New Code] paragraph (30). The definition is a change in wording, but not in substance, from the definition in section 1(23) of the Bankruptcy Act . . . . Person includes individual partnership, and corporation. . . . The definition does not include an estate or a trust, which are included only in the definition of 'entity' in proposed 11 U.S.C. 101(14)." [46]

■ We are unconvinced of Compass' conclusion therefrom that Congressional intent undisputably reveals that a trust, as such, under *both* the former Act and the new Code, is not a person eligible for relief under their respective rehabilitative provisions. Quite apart from the principle that new legislation is "not directly controlling" on courts deciding cases under a former Act,[47] and that only "to a limited extent" is it proper to consider the new Bankruptcy

---

**41.** As we have observed earlier, Bankruptcy Act § 4a, 11 U.S.C. § 22a, extends *voluntary* bankruptcy, *inter alia*, to "*any* person" (emphasis supplied).

**42.** The District Court in *Matter of Highway and City Freight Drivers, Etc.*, 432 F.Supp. 1326, 1328 (E.D.Mo.1977) fell into this error which was doubtless the proximate cause for its reversal. See *Matter of City Freight Drivers, Etc. v. Gordon*, 576 F.2d 1285, 1289 (8th Cir.), *cert. denied sub nom. Gordon Transports Inc. v. Highway and City Freight Drivers*, 439 U.S. 1002, 99 S.Ct. 612, 58 L.Ed.2d 678 (1978).

**43.** See note 30 *ante*. See also *Cantor v. Wilbraham and Monson Academy, supra* 609 F.2d at 33 which, in unabashed dictum accepted without analysis, *inter alia*, the holding in *In re Associated Developers Trust, supra*, that an ordinary family trust (*i. e.* not a Massachusetts trust), is ineligible for Chapter XII relief.

**44.** Since we have determined that the land trust, and not the trustee here, is the debtor (See *Cantor v. Wilbraham and Monson Acade-*

*my, supra*), we do not reach Compass' argument, lifted directly from *Associated Developers Trust, supra*, at 437–438, relating to Bankruptcy Act § 70a, 11 U.S.C. § 110a.

**45.** Pub.L. No. 95–598, 92 Stat. 2549 (enacted Nov. 6, 1978, effective October 1, 1979). The instant case was filed, of course, under the Bankruptcy Act of 1898 which is applicable here. See Title IV, Section 403(a), Pub.L. No. 95–598 (1978). To be sure, there is no Chapter XII under the Bankruptcy Reform Act of 1978.

**46.** 11 U.S.C. § 101 (1979). Historical and Revision Notes. See House Report No. 95–595, 95th Cong. 1st Sess. (1977) 313, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6270; Senate Report No. 95–989, 95th Cong. 2d Sess. (1978) 25, U.S.Code Cong. & Admin.News 1978, p. 5811.

**47.** *Broadcast Music, Inc. v. Columbia Broadcasting*, 441 U.S. 1, 16, 99 S.Ct. 1551, 60 L.Ed.2d 1 (1979).

Code in deciding 1898 Bankruptcy Act cases,[48] "[o]pinions attributed to a Congress . . . years after the event cannot be considered evidence of the intent of the Congress [when it passed the Bankruptcy Act of 1898] . . . ."[49]

■ Moreover, in answer to petitioner's argument, in this regard, although it may be that the petitioner, as a trust, is not a "person" as such term is defined in the 1978 Code (but is a "person" as we hold here under the 1898 Act), it appears that this land trust *may* qualify as a "person" for reorganizational relief under the 1978 Code as a "corporation".[50]

In any event, we attach no significance to Compass' arguments addressed to the 1978 Bankruptcy Reform Act.

(3)

Compass maintains, additionally, that by virtue of certain 99 year leases by petitioner of the latter's real property interests (*i. e.* the improvements on the land)[51] to a third party, petitioner is not a proper Chapter XII debtor since it is not the requisite owner of "real property or a chattel real which is security for any debt."[52] The basis for this contention stems from what Compass seeks to convince this Court is a "self-evident" fact that the improvements have a useful life "substantially shorter than the remaining term [94 years] of the 99-year leases."[53]

■ This contention, at once, implicates both the measure of the petitioner's incidence of ownership and the feasibility of the debtor's rehabilitation through a plan or arrangement.[54] But, as the Court observed in *Matter of Bergman*, on a motion to dismiss we are concerned only with this Court's "*power* to proceed."[55] Where, as here, the petitioner has a reversionary interest, even if it be determined to be miniscule or unsubstantial, such interest is sufficient to withstand a dismissal motion.[56]

■ Moreover, in spite of Compass' assurances that it is "self-evident" that the petitioner, upon reversion to it of the improvements would have no interest therein cognizable under Chapter XII of the Act, a factual hearing would necessarily be required in order to determine such issue. Compass' resort to the vehicle of a motion

---

**48.** *In re Texlon Corp.,* 596 F.2d 1092, 1098 (2d Cir. 1979).

**49.** *Cf. SEC v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 199–200, 84 S.Ct. 275, 287, 11 L.Ed.2d 237 (1963) (SEC Act) (*quoted with approval in Transamerica Mortgage Advisors, Inc. [TAMA] v. Lewis,* —— U.S. ——, 100 S.Ct. 242, 254 n.9, 62 L.Ed.2d 146 (1979) (*dissenting opinion*).

**50.** 11 U.S.C. § 101(8)(A)(v) (1979) provides that a "corporation" includes a business trust. It is noteworthy that this new provision does not limit, as did § 1(8) of the 1898 Act, the inclusion, as a corporation, of business trusts only to trusts "wherein beneficial interest or ownership is evidenced by certificate or other written instrument." See 2 Collier on Bankruptcy ¶ 101.08 at 101–19 (15th ed. 1979). Moreover, under the 1978 Code, a "corporation", which *is* a "person" (11 U.S.C. § 101 [30] [1979]) is a "debtor" (11 U.S.C. § 101[12] [1979]) eligible for reorganizational relief, unlike Bankruptcy Act Chapter XII which excluded a corporation therefrom for relief. See Bankruptcy Act § 406(6), 11 U.S.C. § 806(6).

**51.** The improvements consist of the Barcelona and International Hotels situated in Miami Beach, Florida.

**52.** Bankruptcy Act § 406(6), 11 U.S.C. § 806(6). It should be noted, that under the law of Florida, a leasehold estate is a chattel real. *Oliver v. Mercaldi,* 103 So.2d 665, 668 (Fla.App. 2d Dist. 1958).

**53.** See Compass' "Memorandum of Law in Support of Motion to Dismiss Chapter XII Proceeding" at 14–15.

**54.** *Matter of Bergman,* 585 F.2d 1171, 1178 (2d Cir. 1978).

**55.** *Ibid.* (italics in text).

**56.** *Owners of "SW8" Real Estate v. McQuaid,* 513 F.2d 558 (9th Cir. 1975). Moreover, as the Court in *Bergman* observed:

". . . allowing the court to make a reasonable exploration of the possibilities of a plan is a wiser course than barring the debtor from bankruptcy [sic] on the ground that his interest in the realty is insufficient to qualify him as a real property owner." *supra* at 1179.

to dismiss, in this regard, is both improper and unavailing.[57]

### (C)

For all the foregoing reasons, the motion to dismiss this Chapter XII case on the ground of a lack of subject matter jurisdiction is denied.

Since we hold that this Court has subject matter jurisdiction over this Chapter XII case, we now turn to Compass' motion for a change of venue.

## II

## CHANGE OF VENUE

### (a)

*general rules applicable to a motion for change of venue*

This alternative motion by Compass, for a change of venue, is brought pursuant to Bankruptcy Rule 12–13(b), 421 U.S. 1096, 95 S.Ct. 2742, 44 L.Ed.2d lxv and Bankruptcy Rule 116(b), 411 U.S. 1013, 93 S.Ct. 3107, 37 L.Ed.2d xlii to transfer this Chapter XII case to the United States District Court for the Southern District of Florida upon the ground of improper venue.[58]

The petitioner, quite expectantly, maintains that this case is not laid in the wrong district and even if it is, argues that the interest of justice and the convenience of parties require that the case be retained in this district.

The pertinent statutory provisions read as follows:

Rule 12–13

"(a) *Proper Venue*

(1) General Venue Requirement. A petition filed pursuant to Rule 12–6 [an original Chapter XII petition] may be filed in the district (A) where the debtor has had his principal place of business or his principal assets for the preceding 6 months or for a longer portion thereof than in any other district . . . ."

Rule 116(b) (*Transfer of Cases; Dismissal or Retention When Venue Improper*)

"(1) *When Venue Proper.* Although a petition is filed in accordance with subdivision (a) of this rule, [the] court may, after hearing on notice to the petitioner . . . in the interest of justice and for the convenience of the parties, transfer the case to any other district. . . ."[59]

"(2) *When Venue Improper.* If a petition is filed in a wrong district, the court may, after hearing on notice to the petitioner . . . dismiss the case or, in the interest of justice and for the convenience of the parties, retain the case or transfer it to any other district. . . ."

As this Court has noted, on a previous occasion,[60] we may summarize these venue provisions as follows: A case properly *or* improperly brought in a district may be transferred whenever "the interest of justice" or "the convenience of parties" requires; a case *properly* "brought within a

---

57. We find, as well, that Compass' motion to dismiss, based upon its further allegations that there is no prospect for either the petitioner's rehabilitation or for the latter's submission of a feasible plan, or that the case is not being maintained in good faith, similarly must be denied. The cases teach us that these issues require an evidentiary hearing "adequate" to determine the merits of such allegations. *In re Bolton Hall Nursing Home*, 432 F.Supp. 528, 530 (D.Mass.1977); *In re Colonial Realty Investment Co.*, 516 F.2d 154, 160 (1st Cir. 1975).

58. Compass also moves for dismissal of this case pursuant to Bankruptcy Rule 116(b)(2), 411 U.S. 1013–14, 93 S.Ct. 3108, 37 L.Ed.2d xlii made applicable to Chapter XII cases by Bank-

ruptcy Rule 12–13(b), 421 U.S. 1096, 95 S.Ct. 2742, 44 L.Ed.2d lxv. Since dismissal is not justified, "[a]bsent some showing of bad faith or oppression", *In re Bankers Trust*, 403 F.2d 16, 23 (7th Cir. 1968), which, as noted earlier in this opinion, cannot be demonstrated on the record as it presently stands here, this motion to dismiss is denied.

59. The language of Bankruptcy Rule 116(a) referred to in Rule 116(b)(1) is identical with the provision in Rule 12–13(a)(1)(A) quoted above.

60. *Matter of Olde Concorde Associates*, 16 C.B.C. 611, 613 (S.D.N.Y.1978) (Bankruptcy Court).

district may, of course, be *retained* there . . . and, under subdivision (b), a case wrongly brought within a district may be *retained* there if the interest of justice requires" [61] or, if the convenience of parties requires.[62]

▬▬▬▬ Since the transfer of a case from one district to another necessarily disrupts the continuing processes of a court-supervised rehabilitation, the burden of demonstrating, by a fair preponderance of the evidence, that a transfer is warranted, is upon the movant, Compass. Once that burden has successfully been discharged, "the burden shifts to those who ask the Court to retain a wrongly placed case to show valid reasons for the exercise of discretion to retain the case. . . ." [63]

Hearings were held before this Court to determine the merits of Compass' motion to transfer.

### (b)

### *Is Venue Proper?*

Since, undisputably, the principal assets of the petitioner are located in Miami Beach, Florida, there is no question but that the Southern District of Florida is a district in which this petitioner "could have rightly filed its petition in the first instance." [64] The alternative factual area of inquiry un-der Bankruptcy Rule 12–13(a)(1)(A), with respect to the propriety of this forum, for venue purposes, is whether or not the petitioner's principal place of business is in this district.[65]

Since neither the Bankruptcy Act [66] nor Rules [67] aid us in this inquiry, we must necessarily determine this question "in the light of the facts and circumstances disclosed in . . . [this] case." [68]

Compass, in support of its contention that the petitioner's principal place of business is in Miami Beach, and not New York City, argues that petitioner [69] : (1) has no bank account in New York; (2) has no employees in New York; (3) filed no tax returns from New York; (4) has no New York telephone listing in its name; (5) pays no rent for the New York City law office space occupied by the trustee and utilized by the latter, in the main, for his other numerous and sundry enterprises; (6) has no listing in the building directory where the trustee's office is located, and; (7) has not produced any proof of substantial correspondence or business activity emanating from such office relating to it during the critical six month period prior to the filing of this Chapter XII case. The credible evidence at the hearings amply supports these contentions.

---

**61.** *In re Fada Radio & Electric,* 132 F.Supp. 89, 90 (S.D.N.Y.1955) (emphasis in text).

**62.** *In re Fada Radio & Electric, supra,* was decided under former Bankruptcy Act § 32(b) and (c), 11 U.S.C. § 55(b) and (c). That section has been revised by present Bankruptcy Rule 116(b) to permit the Court to retain a case, brought in a wrong district, on the additional ground of "the convenience of parties."

**63.** *Matter of Valley Fair Corp.,* 16 C.B.C. 586, 589 (1978) (Bankruptcy Court) (citations omitted) (Chapter XI case). See also *In re Hudik-Ross Co.,* 198 F.Supp. 695, 698 (S.D.N.Y.) aff'd *sub nom. Matter of S.O.S. Sheet Metal Co. Inc.,* 297 F.2d 32 (2d Cir. 1961).

**64.** *In re Hudik-Ross Co., supra* at 698.

**65.** *In re Hudson River Nav. Corp.,* 59 F.2d 971, 973 (2d Cir. 1932). See also *Guarantee Acceptance Corp. v. Fidelity Mortgage Investors,* 544 F.2d 449, 452 (10th Cir. 1976) (Chapter X case).

**66.** Bankruptcy Act § 2a(1), 11 U.S.C. § 11(a)(1) invests the courts of bankruptcy with jurisdic-tion, *inter alia,* to "adjudge persons bankrupt who have had their principal place of business . . . within their respective territorial jurisdictions for the preceding six months . . .." Since the 1952 amendment to the Bankruptcy Act " . . . the courts and the applicable authorities have consistently held that § 2(a)(1) of the Bankruptcy Act, notwithstanding its language and location in the Act, is a true venue provision and is not jurisdiction confining or defining. . . . " *Bass v. Hutchins,* 417 F.2d 692, 694 (5th Cir. 1969). (citations omitted)

**67.** Bankruptcy Rule 12–13(a)(1)(A).

**68.** *Cf. Hawaiian Investors v. Thorndale,* 339 F.2d 807, 809 (8th Cir. 1965); *Guarantee Acceptance Corp., v. Fidelity Mortgage Investors, supra* at 452.

**69.** As we stated earlier, in footnote 22, *ante,* the land trust is the debtor here, *not the trustee.*

■ Even if this were not so, *arguendo,* the very nature of a land trust militates against a finding that the happenstance of its trustee's general place of business, as urged by petitioner, should control the placement of venue. Although the trustee is empowered to deal with third parties with respect to the title of the trust real estate, the beneficiaries of the land trust have "complete power to manage and control the property" of the trust.[70] Here, the sole beneficiary is Barcelona Hotel, Ltd., a Florida limited partnership based in the Southern District of Florida. Thus in view of the particular legal characteristics of the land trust here, there is a coincidence of both the location of assets and principal place of business.

■ We need not, therefore, concern ourselves, as in the more usual situation present in venue determination, whether the principal place of business is in the district "where the debtor maintains its general executive offices or in the district where the debtor operates its production facilities."[71] Accordingly, both on the basis of the facts presented at the hearings and upon our analysis of the functioning of this land trust, venue was improperly placed in this district.

It remains, however, despite this finding, to determine whether this case should be retained here in the interest of justice and convenience of the parties.

(c)

### Should This Court Retain the Case Despite Improper Venue?

■ This district,[72] among others,[73] as well as several Courts of Appeals,[74] has adopted the following list of factors, as set forth in *In re Triton Chemical Corp.*[75] to determine the forum of greatest convenience:

"(1) proximity of creditors of every kind to the court;

(2) proximity of the bankrupts to the court;

(3) proximity to the court of the witnesses necessary to the administration of the estate;

(4) location of the assets and

(5) the economic and efficient administration of the estate." [76]

The petitioner's schedule of creditors lists nine creditors, seven of which are located in Florida. Not only are the majority of creditors located there, but those creditors having by far the most at stake, by reason of the size of their claims, have their residence in Florida.

■ As noted earlier, the debtor's business, *i. e.* the operation of the Barcelona and International Hotel takes place in Miami Beach. Necessarily, the operating records of these hotels are kept in Florida. Similarly the witnesses, be they employees or creditors, are, in the main, Florida residents.[77]

---

**70.** Garrett, *Land Trusts,* Current Real Estate Problems 655, 665 (Winter: 1955). See also this debtor's Land Trust Agreement, ¶ 4.

**71.** *Cf. Matter of Commonwealth Oil Refining Co., Inc.,* 596 F.2d 1239, 1245 (5th Cir. 1979). (Chapter XI case). See also *Matter of Olde Concorde Associates, supra* at 615; *Matter of Valley Fair Corp:, supra* at 588.

**72.** *In re Hudik-Ross Co. Inc., supra* at 699; *In re L. F. Popell Co.,* 221 F.Supp. 534, 537 (S.D.N.Y.1963).

**73.** See *e. g. Young Properties Corp. v. United Equipment Corp.,* 394 F.Supp. 1243, 1246 (S.D. Cal.1975).

**74.** *Matter of Commonwealth Oil Refining Co. Inc., supra* at 1247; *In re Bankers Trust,* 403 F.2d 16, 23 (7th Cir. 1968); *Hawaiian Investors v. Thorndale, supra* at 809.

**75.** 46 F.Supp. 326 (D.Del.1942).

**76.** *Id.* at 329.

**77.** Moreover, the petitioner's argument, that his accountants would be inconvenienced is no more convincing than the argument, in *Olde Concorde Associates, supra,* n. 12, that counsel would be inconvenienced. Bankruptcy Rule 116(b)(2) is concerned only with the convenience of the parties and their witnesses. *Cf. Scheinbart v. Certain-Teed Product Corp.,* 367 F.Supp. 707, 710 (S.D.N.Y.1973).

 In addition to the undisputed fact that the location of assets is in the Southern District of Florida, clearly the economic and efficient administration of the estate would best be promoted by transfer of this case. The "heart" [78] of a Chapter XII case is the proposal and acceptance of an arrangement "which has for its primary purpose the alteration or modification of the rights of creditors . . . holding debts secured by real property or a chattel real of which the debtor is the legal or equitable owner" [79]. The secured creditor, Compass, with whom the petitioner must negotiate is located in Florida, albeit in the Northern District. In my view, both the efficient and economic administration of the debtor's estate point to the Florida Court as the proper forum.

As the Court noted in *Matter of S.O.S. Sheet Metal*,[80] the "discretion to retain jurisdiction 'in the interest of justice' should be exercised with great caution and in few cases." [81] This is not the case for the exercise of such discretion.

### III

### CONCLUSION

Compass' motion to dismiss this Chapter XII case is in all respects denied; its motion for change of venue to the United States District Court for the Southern District of Florida is in all respects granted.

The parties are directed to settle an order, in conformity with this opinion, on three (3) days notice.

**78.** *Cf. Matter of Commonwealth Oil Refining Co., Inc., supra* at 1247.

**79.** Bankruptcy Act § 406(1), 11 U.S.C. § 806(1).

**80.** 297 F.2d 32 (2d Cir. 1961).

**81.** *Ibid.* See also *In re Kerr's Inc.*, 253 F.Supp. 742, 744 (S.D.N.Y.) *aff'd* 360 F.2d 163 (2d Cir. 1966).